Hays *v.* State.

4941            324 S. W. 2d 520

Opinion delivered June 1, 1959.

*James E. Hyatt, Jr.* and *Omar F. Greene,* for appellant.

*Bruce Bennett, Atty. General;* by *Thorp Thomas, Asst. Atty. General,* for appellee.

Ed. F. McFaddin, Associate Justice. Appellant, Arthur Hays, was convicted of first degree murder for the homicide of Justus Edrington, and sentenced to death. This appeal ensued. The motion for new trial contains three assignments; and we also consider every objection in the transcript, as is the rule in capital cases. *Smith* v. *State,* 205 Ark. 1075, 172 S. W. 2d 249. We group and discuss all the assignments and objections in suitable topic headings.

I. *Sufficiency Of The Evidence.* The deceased, Justus Edrington, operated a liquor store owned by Melvin Lapides, in Osceola, Arkansas. Some time between 9:30 and 10:30 on the night of Friday, August 8, 1958, Will Henderson went into the store to make a purchase, and found Edrington either dead or dying. The law enforcement officers were called and began investigations. Edrington was in the back room of the store, sitting on the floor and leaning against the back door, which was locked. He had been beaten with a granite rock and a railroad spike; and his head and face were covered with blood. Edrington was immediately taken to the local hospital and was pronounced dead on arrival. He might have been dead at the time Henderson discovered him.

Someone had not only wounded Edrington, but had also robbed the liquor store: the cash register was open, another money repository was open, and several small silver coins were scattered on the floor. It was reasonably inferred that the culprit had entered and departed through the front door; that a terrible struggle had taken place; and that the robbery had been committed after the struggle, since there was blood on the cash register. Pictures taken the same night disclosed a very gory scene. The admissibility of these and other pictures will be discussed in Topic IV, *infra.*

An immediate search was started to locate the culprit; money had been spent with blood on it; the source was traced to appellant; and he was arrested Monday night, August 11, 1958, and placed in jail. The next day, August 12th, appellant was taken before the Osceola Municipal Court for preliminary trial, was formally charged with the murder of Justus Edrington, and entered a plea of guilty. This will be discussed in Topic III, *infra.* The appellant went with the officers to the scene of the crime and told them just how he struck and beat Edrington, committed the robbery, and then used the bloody money to buy an automobile. All of the furnished details were verified; and the bloody granite rock and railroad spike, used to beat Edrington, were identified.

Hays was sent to the Arkansas State Hospital for Nervous Diseases, under the provisions of § 43-1301 Ark.

Stats.; and the results of the examination showed that he was "without psychosis". He was charged with first degree murder committed while in the act of robbery (§ 41-2205 Ark. Stats.). Able counsel were appointed by the Trial Court to represent him, and they have vigorously prosecuted this appeal and have exemplified the fine tradition of the legal profession. The trial jury found the defendant guilty and fixed the punishment at death by electrocution. The evidence is amply sufficient to support the verdict. There remain questions, whether any errors were committed in the admission of the evidence, or in any other procedure in the course of the trial; and these we will now discuss.

II. *Corpus Delicti.* The appellant's counsel insist that the State failed to prove the *corpus delicti*; that is, they insist that the State failed to prove that Edrington died from the effect of a wound unlawfully inflicted by the appellant. Appellant's counsel argue that Edrington could just as well have died from a heart attack as from the assault that Hays made. The words, *corpus delicti,* mean the "body of the crime". The State must prove the *corpus delicti,* which means that the State must prove beyond a reasonable doubt: (a) that the deceased was in fact killed; and (b) that the deceased came to his death by the act of someone other than himself.[1]

That Edrington died, is established because both the doctor and the funeral director testified that they viewed his body. The mortician who prepared Edrington's body for burial testified that there were twenty-one wounds on the head which required the use of sutures. Some were straight cuts and some were triangular cuts. Dr.

---

[1] In the case at bar the Trial Court instructed the jury on *corpus delicti* in Instruction No. 9, as follows:

"You are instructed that in all homicide cases *corpus delicti* must be proved as an essential condition of conviction. *Corpus delicti* is defined as meaning both the 'body of the deceased' and the 'body of the crime'; and the 'body of the crime' consists of three elements: That is, first, that the deceased should be shown to have died from the effect of a wound; second, that it should appear that this wound was unlawfully inflicted by the defendant; and third, that the defendant was implicated in the crime. The burden of proof is upon the State to prove to your satisfaction, beyond a reasonable doubt, all three of these elements, and if it fails to prove to your satisfaction, beyond a reasonable doubt, any one of these elements, then your verdict must be for acquittal."

Fairley, who examined Edrington and pronounced him dead, stated that the wounds on Edrington's head were "conducive to cause death", and that the wounds on the head were a producing cause of death and competent to produce death. On cross-examination the following occurred:

"Q. You don't know, whether or not, something other than the blows on the head produced death?

A. Yes, I know.

Q. How do you know, doctor?

A. Because, he had the injury to produce death."
And on re-direct examination this occurred:

"Q. Were the wounds on Mr. Edrington's head such as were calculated to produce death?

A. Yes, sir."

It was testified that the defendant admitted inflicting blows on Edrington with the granite rock and the spike. Certainly there was ample evidence to submit the question to the jury as to the cause of Edrington's death. Our leading case on *corpus delicti* is that of *Edmunds* v. *State*, 34 Ark. 720, decided in 1879. In that case, Chief Justice ENGLISH said:

" 'In cases of alleged homicide, the proof of a *corpus delicti* involves that of the following points, or general facts: *First,* the fact of death, particularly as shown by the discovery of the body, or its remains: *secondly,* the identification of such body, or remains, as those of the person charged to have been killed; and, *thirdly,* the criminal agency of another, as the cause of the death . . .

" '*Criminal agency as the cause of death.* A dead body or its remains, having been discovered and identified as that of the person charged to have been slain and the basis of a *corpus delicti* being thus fully established, the next step in the process, and the one which serves to complete the proof of that indispensable preliminary fact is, to show that the death has been occasioned by the

criminal act or agency of *another person*. This may always be done by circumstantial evidence, including that of the presumptive kind; and for this purpose a much wider range of inquiry is allowed than in regard to the fundamental fact of death, and all the circumstances of the case, including facts of conduct on the part of the accused, may be taken into consideration.' "

We conclude that the *corpus delicti* was sufficiently established to take the case to the jury.

III. *Objection To Statements Made By Appellant At And after The Preliminary Trial.* As aforesaid, appellant was arrested Monday night, August 11th. The next morning, Tuesday, August 12th, he was taken before the Municipal Court in Osceola for preliminary trial and he there entered the plea of guilty. One of the objections raised by appellant's counsel was that the plea at the preliminary trial should not have been allowed to be shown in the trial of the case; but we find no merit in this contention. In *Barnhardt* v. *State,* 169 Ark. 567, 275 S. W. 909, the accused had pleaded guilty at the preliminary trial, and such fact was testified in the trial on the merits, and we held that such was competent, saying:

"This was a question of fact, and any admission made by Barnhardt in this connection was admissible against him. He had the right to testify as to the plea entered by him, and likewise to explain such plea, but any statements made by him in making this plea were admissible against him, and it was competent and admissible for Hughes, or any other witness who heard Barnhardt's statements, to testify as to the statements then made."

After the preliminary trial the appellant went with the officers to the liquor store and told them just how he had committed the crime. Appellant's counsel objected to statements that the defendant made to the officers at that time. These statements were clearly admissible. Any statement voluntarily made by the defendant was an admission that was competent evidence. *Bly* v. *State,* 213

Ark. 859, 214 S. W. 2d 77; and *Wooten* v. *State,* 220 Ark. 750, 249 S. W. 2d 964.

IV. *Admission Of Pictures.* In the course of the trial the State introduced several photographs. Some of these were taken the night Edrington was killed and show the condition of the inside of the liquor store. It was shown that nothing had been disturbed, and that the conditions were identical with what they were when Edrington was found. Other pictures were taken inside the store while the defendant was there on August 12, 1958; and he was pointing out the blood on some of the articles in the store, and also showing how he had rifled the cash register. The accuracy and authenticity of all of the pictures having been established, they were clearly admissible. *Grays* v. *State,* 219 Ark. 367, 242 S. W. 2d 701; *Smith* v. *State,* 216 Ark. 1, 223 S. W. 2d 1011; *Sellers* v. *State,* 93 Ark. 313, 124 S. W. 770.

V. *The Punishment.* Appellant's counsel most vigorously argue that the punishment should be life imprisonment instead of the death penalty; but the Trial Court correctly instructed the jury in its Instruction No. 7, as follows:

"Therefore, if you find from the evidence in this case, beyond a reasonable doubt, that the defendant, Arthur Hays, in the Osceola District of Mississippi County, Arkansas, unlawfully and of his malice aforethought while in the perpetration of or in the attempt to perpetrate robbery, did assault one Justus Edrington by striking him about the head and face with an iron mauling spike and with a granite rock, and from which the said Justice Edrington died, then you will find him guilty of murder in the first degree and if you do so find it will be your duty to assess the punishment. The punishment for murder in the first degree is death by electrocution or, at the option of the jury, imprisonment in the penitentiary for the term of his natural life."

The verdict of the jury was: "We, the jury, find the defendant guilty of murder in the first degree and fix his punishment at death by electrocution."

Finding no error, the judgment is affirmed.