YOUNG *v.* STATE.

4940                                    324 S. W. 2d 524

Opinion delivered June 1, 1959.

*James E. Hyatt, Jr.,* for appellant.

*Bruce Bennett,* Atty. General; by *Thorp Thomas,* Asst. Atty. General, for appellee.

ED. F. McFADDIN, Associate Justice. This is a capital case. On Sunday afternoon, August 17, 1958, the

appellant, William Young, shot and killed Erman Cox, a State Highway Police Patrolman. Appellant was arrested a few hours after the shooting; and at a preliminary hearing in the Municipal Court of Osceola, he pleaded guilty. He was charged with murder in the first degree. (§ 41-2205 Ark. Stats.) The jury trial of appellant in Circuit Court began on October 14, 1958; and he entered a plea of guilty to the information filed against him. A jury was empaneled to determine the degree of the crime and to fix the punishment, as provided by § 43-2152 Ark. Stats.[1] The jury returned a verdict of murder in the first degree and fixed the death penalty. The motion for new trial was overruled; sentence was pronounced; and this appeal ensued. We have examined all of the assignments in the motion for new trial and also every objection appearing in the transcript, as is our rule in capital cases (*Smith* v. *State*, 205 Ark. 1075, 172 S. W. 2d 249). We group and discuss the assignments and objections in suitable topic headings.

I. *Sufficiency Of The Evidence.* Erman Cox was an Arkansas State Highway Police Patrolman; and had been stationed at Osceola, Arkansas for some time. He was subject to call 24 hours a day; and the fact that he was not in uniform did not prevent him from being in the discharge of his duties. About 1:00 P.M. Cox went in his personal car (being a red and white Dodge) to the store of Mr. Heaton to get a package of cigarettes. Cox had frequently been in that store, both in uniform and in civilian clothes; and Mr. Heaton testified that he had seen the appellant, Young, talking to Officer Cox when the latter was in uniform as well as in civilian clothes. While Officer Cox and Mr. Heaton were in conversation (about 1:00 P.M. Sunday afternoon, August 17th) they observed Appellant Young getting someone to push his pickup truck and when the truck started, Young drove in a fast and reckless manner. On direct examination Heaton described the method of Young's driving as "going all over the road"; and on cross-examination he said Young was "zigzagging".

---

[1] Some of our cases involving this statute are: *Carson* v. *State*, 198 Ark. 112, 128 S. W. 2d 373; *Jones* v. *State*, 204 Ark. 61, 161 S. W. 2d 173; and *Rorie* v. *State*, 215 Ark. 282, 220 S. W. 2d 421.

Officer Cox got in his car and "started out after" the appellant and pursued him across two levees to Young's home on the bank of the river. It was there that the homicide occurred. The witness, Grigsby, testified that he saw Young marching Cox at gunpoint around the house and cursing him, and then the witness heard the shot. Other witnesses heard the shot, and when they reached Cox's car they found him seated in his car, dead. A bullet had entered his face under the left eye and had never left the cranium.

In his statement to the officers after the arraignment in Municipal Court, Young said that he shot Cox without knowing that Cox was an officer, but that Cox was retreating to his car; and Young said that after he had shot Cox and while Officer Cox was seated in the car "quivering", Young turned off the ignition to Cox's car, and then went into a boat and went to sleep in the boat after going some distance from the landing. The statement which Young gave to the officers was in writing and witnessed; and Young admitted (when he testified in the hearing on the motion for new trial) that the statements in the confession were correct, and were voluntarily made.

The testimony of all the witnesses makes clear that when Cox saw appellant driving as he was, Cox pursued him to make an arrest; that Young drove to his home, went in and got the gun, came out and marched Officer Cox around the house, cursing him; and then after Cox had returned to his car and was seated therein and had started the engine, Young shot the officer in the face and caused his death. This evidence is sufficient to show that Young acted deliberately, feloniously, wilfully, and maliciously and with premeditation and malice aforethought, and intentionally shot Cox in the head. So the evidence is amply sufficient to support the verdict. We have several cases wherein, after a plea of guilty, the appellant has been given the death sentence by the jury. Some of them are: *Rorie* v. *State,* 215 Ark. 282, 220 S. W. 2d 421; and *Jones* v. *State,* 204 Ark. 61, 161 S. W. 2d 173.

Appellant's counsel, on appeal, argues most persistently that we should reduce the punishment from the death sentence to life imprisonment. It was the prerogative of the jury to assess the degree of the crime and fix the punishment; and when we find the evidence is sufficient to sustain the verdict, we have performed our constitutional duty. In *Rorie* v. *State, supra,* we were urged to reduce the punishment in a death case; and what we said there applies with equal force here:

"Finally, appellant's counsel asks this Court to 'exercise its constitutional power and reduce the death sentence to life imprisonment'. Among other cases, we are cited to *Blake* v. *State,* 186 Ark. 77, 52 S. W. 2d 644, in which case this Court modified the judgment from the death sentence to imprisonment. When this court finds that the evidence is insufficient to support the punishment assessed, then we have the power to modify the punishment. Our cases clearly reflect, however, that this modification is done, not on a basis of judicial clemency, but only in a case in which the evidence would not sustain the higher punishment assessed. In the case at bar we find the evidence sufficient to support the jury verdict."

II. *All Of The Appellant's Rights Were Recognized and Safeguarded.* Appellant's present counsel makes an *ad hominem* argument to the effect that appellant did not receive full protection of all his constitutional rights at the jury trial. We have examined the record most carefully in this regard, and find no merit in such argument. The appellant was taken before an examining magistrate shortly after his arrest (§ 43-601 Ark. Stats.); and he was sent to the State Hospital for sanity examination[2] (§ 43-1301 Ark. Stats.). The information charged in part:

"The said defendant on the 17th day of August, 1958, in the Osceola District of Mississippi County, Arkansas,

_____

[2] The order of commitment to the State Hospital is not in the record before us, but appellant testified (while in support of his motion for new trial) that he had requested a sanity hearing and was taken to the State Hospital at Little Rock on two different occasions. Also, appellant's wife testified (in the hearing on the motion for new trial) that she had filled out papers for the State Hospital while appellant was there.

did unlawfully, deliberately, feloniously, wilfully, maliciously, and with premeditation shoot and kill Arkansas Highway Patrolman, Erman Cox, near Jacksonville Landing, Osceola, Arkansas, by deliberately and intentionally shooting the said Erman Cox through the head with a 31 calibre Japanese make rifle, against the peace and dignity of the State of Arkansas.''

On October 1, 1958, on arraignment in Circuit Court, appellant had no attorney; and the Court appointed two attorneys to represent him, being Messrs. Ralph Wilson and Mitchell Moore. They were and are capable attorneys and conscientious gentlemen. They entered into the discharge of their duties; had access to the signed statement appellant had given the officers; and they conferred with appellant, his wife, and others. As to defendant's plea, the record reflects:

''On this 14th day of October, 1958 comes the State of Arkansas by Terry Shell, Prosecuting Attorney, and comes the defendant in proper person in custody of the Sheriff and by his Attorneys, Moore and Wilson, and waived formal arraignment, and after having the nature of the Information, plea, and effect thereof explained to him by the Court elected to enter a plea of GUILTY.''

After the plea of guilty, the Court empaneled a jury to fix the degree of the crime and the punishment (§ 43-2152 Ark. Stats.). Appellant was advised repeatedly by his counsel that he could take the witness stand or not, as he saw fit, and that his failure to testify would not be considered against him. He decided that he did not want to testify, and later admitted (in the hearing on the motion for new trial) that he so advised his attorneys. These lawyers were so anxious to fully represent their client and protect his rights that they consulted an attorney from another city, and even went to the Trial Judge in chambers on the matter of the appellant deciding not to testify. The cross-examination of some of the State's witnesses and the objections made as to the order of argument (to be considered later) show the zeal which these attorneys exhibited in representing the confessed murderer. Since appellant had

pleaded guilty in the examining trial and had made a free and voluntary confession, the attorneys thought that by allowing the appellant to plead guilty, the jury might give him punishment of life imprisonment rather than the death sentence.

The Trial Court required the State to prove every point of its case, just as though there had been no plea of guilty, because it was for the jury to determine the degree of the crime and to fix the punishment. The Court fully instructed the jury. The forms of verdict given to the trial jury covered not only murder in the first degree with the two options of punishment, but also murder in the second degree with years for sentence, and also a form for a possible finding of not guilty. The jury returned into open Court its verdict:

"We, the Jury, find the defendant guilty of Murder in the first degree and fix the punishment at death by electrocution."

When the trial came to the stage of argument to the jury, this occurred:

"MR. WILSON: The defendant moves that the counsel argue alternately, according to § 43-2133 Ark. Stats.

"THE COURT: In ruling upon this, the court is fixing the order of argument to be: first, the argument of counsel for the State, then, argument by counsel for the defendant, in order in which they themselves determine, and the closing argument to be had by counsel for the State.

"MR. WILSON: Exception."

The Court made no error in its ruling. The record reflects that the State was represented by its Prosecuting Attorney, Terry Shell, and its Deputy Prosecuting Attorney, H. J. Swift; and that the defendant was represented by Ralph Wilson and Mitchell Moore. In *Cooper* v. *State,* 145 Ark. 403, 224 S. W. 726, the accused admitted the killing, the venue, and the time of the killing, and claimed that such admission gave his attorney the right

to open and close the argument; but this Court held that even with such a plea of guilty, the State had the burden of proving the defendant's guilt beyond a reasonable doubt, and that the right to open and close the argument remained with the State. With the right to open and close the argument remaining with the State, and with only two attorneys representing the State, the Court was not in error in requiring the State to open the argument and then the two attorneys for the defendant to make their arguments, and then the State to close the argument.

We find that in all the other matters, the Court was zealous in protecting the appellant's rights. After the verdict, appellant's mother decided to employ counsel to represent appellant, so sentence was delayed to give the appellant's mother time to employ an attorney of her own choosing. She employed the present counsel, James M. Hyatt, Jr., and he filed the motion for new trial; and at the hearing on that motion appellant's counsel called a series of witnesses, and appellant testified himself — something he had not done at the original trial.

III. *The Motion For New Trial.* The verdict of the jury was returned on October 15, 1958, and the present counsel filed the motion for new trial on October 30, 1958. The hearing on the motion was delayed until December 18, 1958. At the conclusion of the hearing the motion for new trial was overruled and formal sentence was pronounced.

We find nothing to justify any criticism of trial counsel (see *White* v. *State,* 192 Ark. 1102, 96 S. W. 2d 771). It is frequently difficult for a lawyer representing a defendant in a criminal case to decide what is best as regards the defendant taking the witness stand. Particularly is it difficult for a court-appointed attorney to make the decision. These attorneys represented a client who had pleaded guilty and who had made a free and voluntary confession. If they had put him on the witness stand, his criminal record would have certainly been developed on cross-examination, just as it was developed when he took the witness stand in support of the motion

for new trial. He seemed to have a tendency to shoot at people: he shot at a man in a car several years before and was sent to the penitentiary for assault with intent to kill. While out on parole, he was not supposed to touch any firearms, and yet he shot at his wife. When that gun was taken away from him, he traded his shotgun for the Japanese rifle with which he killed Officer Cox. The intoxication record of the appellant was likewise developed on cross-examination.

The court-appointed counsel, in the exercise of sound discretion, left it to their client to decide whether he would testify before the jury; he admitted in the hearing on the motion for new trial that he had decided he did not want to face the jury; and the Trial Court instructed the jury that the defendant's failure to take the stand and testify could not be considered against him.

It is argued that the court-appointed attorneys failed to call any witnesses to testify on behalf of the defendant. It occurs to us that the court-appointed counsel used considerable adroitness in this regard: (a) to have called witnesses to refute appellant's voluntary confession would not have had a tendency to reduce the punishment; and (b) the witnesses that the present counsel called, to testify for the appellant in the hearing on the motion for new trial, certainly did not testify to anything that did the appellant any good. The counsel in the trial before the jury did all they could with a bad case.

Finally, it is claimed in the motion for new trial that the appellant was intoxicated at the time that he killed Officer Cox and that such intoxication should have been shown to the jury in defense of the appellant's act of homicide. We conclude that the Trial Court did not abuse its discretion in overruling the motion for new trial on this point. The fact, that appellant had been drinking a great amount of whiskey and beer, does not show that his intoxication had reached a stage amounting to insanity. The facts, that he was able to drive his car over two levees and back to his home and get his gun before the officer following him could get to his house,

indicate that appellant knew what he was doing. In *Casat* v. *State*, 40 Ark. 511, Judge William W. Smith, speaking for this Court, stated the law that has been many times followed by this and other courts, and which is apropos to the case at bar:

". . . the degree of drunkenness that is proved falls short of that extreme point which can mitigate the enormity of his offense. The evidence does, indeed, show that on the morning of the fatal day, and for several days previous, Casat had been drinking more freely than was good for him. But this is not an unusual thing in cases of homicide. There is no evidence that the drinking had proceeded to the extent of producing any disease, either permanent, temporary or periodical, such as delirium tremens, mania-a-potu or dipsomania. So there is no proof that the ordinary effect of strong liquors was to make a mad man of him, as is its effect upon men of a certain temperament. Nor is there any cause to believe that on this particular day his reason was, by excessive indulgence, overthrown, and he no longer able to distinguish the nature and quality of his acts . . .

"But mere nervous excitement does not go far enough to reduce the grade of the offense. No voluntary intoxication can have that effect unless it is accompanied by a temporary destruction of the reason. *Shannahan* v. *Comm.*, 8 *Bush*, 463; S. C., 8 *Am. Rep.* 465; *People* v. *Robinson*, 1 *Parker, Cr. R.*, 649; *Comm.* v. *Hart*, 2 *Brewst.*, 546; *Pennsylvania* v. *McFall*, 1 *Add.*, 255.

"If the inebriate's memory has not been impaired, or his judgment perverted; if his physical senses, and especially his sight and hearing, have not become enfeebled or distorted; if he walks with a firm, elastic step; if he can distinguish friend from foe, and knows the difference between right and wrong, then he retains mind enough to plan and execute a murder . . .

"The eye-witnesses of the final scene are unanimous that he was remarkably cool and collected, until he lashed himself into fury by the abuse of Richardson. He did

not stagger like a drunken man, but his tread was quick and active.''

Finding no error, the judgment is affirmed.

