STATE of Arkansas *v.* Robert A. ROBBINS

CR 98-1394 985 S.W.2d 293

Supreme Court of Arkansas
Opinion delivered December 11, 1998

*Winston Bryant*, Att'y Gen., by: *Todd L. Newton*, Ass't Att'y Gen., and *Kelly K. Hill*, Deputy Att'y Gen., for petitioner.

*Val P. Price*, for respondent.

P ER CURIAM. On June 17, 1998, a Craighead County jury convicted Mr. Robbins of capital murder and sentenced him to death. On July 9, 1998, Mr. Val P. Price, standby counsel for Mr. Robbins, filed a notice of appeal. Both prior to the trial and during the trial, Mr. Robbins argued that he be sentenced to death and informed the court of his intention to waive all rights of appeal. On August 24, 1998, the State filed a Motion for Court to Inquire of Defendant to determine whether Mr. Robbins desired to waive his rights of appeal. The trial judge held a hearing on August 28, 1998, and by order entered on October 19, 1998, granted Mr. Robbins's request to waive his right to

appeal the capital murder conviction and sentence. Mr. Robbins is currently scheduled to be executed on December 15, 1998. Pursuant to our decision in *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988), the State now submits to this court a transcript of the lower court's proceedings along with its petition for writ of certiorari, and requests that we review those proceedings in accordance with the rule established in the *Franz* case. Mr. Val P. Price, Mr. Roger Ray and Ms. Kimberly Boling Bibb, as standby counsel for Mr. Robbins, have filed a response to the State's petition for writ of certiorari. We grant the State's petition for writ of certiorari.

■ ■ In *Franz v. State, supra*, this court set forth the procedure[1] to be followed when a defendant elects to waive his rights to appeal a death sentence:

> In future cases, when a lower court has made a determination that a capital defendant can make a knowing and intelligent waiver of appeal, and has done so, the State has the burden of bringing the record of the lower court proceeding on this issue to this Court for review. The record on this issue should, if possible, be lodged in this Court after the time for appeal has lapsed, but, in any event, it must be lodged at least seven days before the execution date. We will then review the proceeding to determine whether the defendant had the capacity to understand the choice between life and death and to knowingly and intelligently waive his rights to appeal his sentence of death. The standard of review, as in other types of criminal cases, is whether the trial judge's conclusion is clearly erroneous.

296 Ark. at 189–90, 754 S.W.2d at 844. We recently reiterated this procedure in *Riggs v. Humphrey*, 334 Ark. 231, 972 S.W.2d 946 (1998). The State has complied with these procedural requirements.

The trial judge in this case conducted the hearing mandated by our holding in *Franz, supra*, and found that Mr. Robbins does

---

[1] We find no merit in the request by standby counsel that we reverse Mr. Robbins's death sentence, remand for a new sentencing hearing, and order that another attorney be appointed to represent the public interest. The procedure in this case is controlled by our holding in *Franz*.

have the capacity to understand the choice between life and death, as well as the capacity to knowingly and intelligently waive any and all rights to appeal his conviction and sentence. Before making this finding, the trial judge conducted his own inquiry of Mr. Robbins and reviewed three joint exhibits: the March 18, 1998 psychological evaluation by Michael J. Simon, Ph.D., Supervising Forensic Psychologist, Arkansas Department of Human Services, Division of Mental Health Services; the June 19, 1998 order allowing waiver of counsel and invocation of constitutional right to proceed *pro se*; and a copy of the transcript of the competency hearing held on June 5, 1998. The trial court also had the benefit of representations by Mr. Robbins's standby counsel, Mr. Val P. Price, that he had advised Mr. Robbins fully of the consequences of a waiver of his rights of appeal.

With regard to Dr. Simon's psychological evaluation report dated March 18, 1998, it is based on a clinical interview and psychosocial history/assessment and on various psychological tests, including the M.M.P.I., the Competency to Stand Trial Assessment instrument, and the International Personality Disorder Examination. According to Dr. Simon's report and his testimony at the competency hearing on June 5, 1998, Mr. Robbins: (1) was aware of the nature of the charges and the proceedings taken against him, (2) did not lack the capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the alleged offense, and (3) does not suffer from a mental disease or defect which would render him incompetent to elect execution. With regard to this last conclusion, Dr. Simon found that Mr. Robbins's intelligence was at least average, and that Mr. Robbins had no mental disorder at Axis I, although he did have a borderline personality disorder and a narcissistic personality disorder at Axis II. According to Dr. Simon, the decision to waive life and elect death is a decision that can be made by a sane person. Because Dr. Simon ruled out any kind of major mental illness in Mr. Robbins's case, he concluded that Mr. Robbins was competent to choose between life and death. At the June 5 competency hearing, Mr. Robbins testified unequivocally that he wanted his attorney, Mr. Price, to help him get the death penalty.

Based upon the evidence submitted at the competency hearing, the trial court found that Mr. Robbins was competent to stand trial and that he was able to assist his attorneys in the defense of his case. On June 15, 1998, Mr. Robbins invoked his constitutional right to proceed without counsel, *pro se*, and executed a written waiver of his constitutional right to counsel. The trial court entered an order that: (1) allowed Mr. Robbins to proceed without counsel, *pro se*; (2) relieved the court-appointed attorneys from representing Mr. Robbins; and (3) appointed Mr. Robbins's former attorneys as standby counsel, with specific instructions as to their duties in that role. This order enumerates an exhaustive list of findings made by the trial court before it granted Mr. Robbins's request to waive his right to counsel and to proceed *pro se*. According to these findings, Mr. Robbins was advised repeatedly by the trial court and his court-appointed attorneys not to represent himself in a capital murder case where the death penalty is a sentence option. However, Mr. Robbins advised the court that he wanted to waive counsel because of his concern that his court-appointed attorneys would not seek a sentence of death. The trial court also referred to the earlier competency hearing, Dr. Simon's forensic psychological evaluation report, and it's own previous finding that Mr. Robbins was competent to stand trial. Finally, the trial court found that Mr. Robbins made a knowing and intelligent waiver of his right to counsel and that his waiver of counsel was unequivocal.

The trial court's inquiry of Mr. Robbins at the August 28 hearing was thorough and extensive, and Mr. Robbins's responses were unequivocal:

Q. Is it your desire and wishes that absolutely no action be taken by anyone to appeal this decision in your behalf?

A. Yes.

Q. I want to hear you state for me in your own words exactly why it is that you do not want your case appealed?

A. The appeal courts are full of people who feel that they have been wronged by the justice system or something was overlooked or, you know, something was missed. Maybe for

once I am a person that feels that what happened was the proper response to what I did. I know what crime I made and I feel that this is a suitable punishment and I see no reason why I should fight what is right.

Q. Have you thought about the execution, have you thought about what will take place and that your life will be permanently and forever terminated by the procedure employed by the state, have you considered that and thought about it?

A. Yes, Sir.

Q. Have you discussed that eventuality with anyone?

A. With several people, yes.

Q. Tell me who you have talked to about it with?

A. I have talked with my parents about it and I have talked to my spiritual advisor about it. I have several friends who I correspond with who I have talked loosely about it with. Where I am being housed on death row I am surrounded by people who are facing the exact same thing and that is something that they all understand and sympathize with and can offer support and they understand it. I have been able to talk about this with people who have gone the way of the appeal and have been waiting for twenty years and the people who have been waiting seven years and then they finally realize that this is what they deserve and only after so much fighting they realize that they are fighting the wrong thing. I have talked to people about the actual methods of the execution of lethal injection and I talked to a man who was executed just a little over a month ago and I saw the proceedings up to his execution broadcast on television. I have made it my business to know about this execution and what is going to happen and what couldn't happen and I feel like I have looked at it from every angle. I have nothing all day except think about this.

Q. Do you understand that you could spend all day long thinking and studying ways to avoid the death penalty by using the legal process to defend against execution?

A. I do. I also know that I could spend the rest of my life miserable for what I have done and never find the redemption that I need except in the death penalty.

 After a careful review of the record and exhibits, we cannot say that the trial court was clearly erroneous when it found that Mr. Robbins has the capacity to choose between life and death and to knowingly and intelligently waive any and all rights to appeal the death sentence. We, therefore, affirm the trial court's decision that Mr. Robbins has knowingly and intelligently waived his right to appeal. Accordingly, we direct that this court's mandate be issued at the time this opinion is handed down.

 The federal law, Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C.S., *et seq.* (Supp. 1998), was enacted after our *Franz* decision, and it was passed so as to provide significant restrictions on the amount of time federal courts may take to review death-penalty cases, if the states comply with the requirements of the 1996 federal law. To obtain the benefits of this federal law, the Arkansas General Assembly enacted Act 925 of 1997 and this court adopted Rule 37.5 of the Arkansas Rules of Criminal Procedure. Under Rule 37.5, as applied in this case, this court's opinion and mandate will issue immediately to the trial court, which now must conduct a hearing within twenty-one days of the date of the mandate. *Id.* Mr. Robbins must be present, and the trial court must inform him of the possible relief under Rule 37, and ask if he desires appointment of an attorney. Any waiver must be made on the record in open court. If Mr. Robbins continues to reject the appointment of counsel, and the trial court determines that he understands the legal consequences of his decision, the court shall then issue written findings to that effect and enter a written order declining to appoint an attorney to represent him. *Id.*[2] The trial court must issue its findings within seven days after the hearing and, within five days of entering the findings, shall return the court's transcript and findings to this court for final review.

---

[2] Obviously, if Mr. Robbins has a change of mind and decides to seek relief from his death sentence, other Rule 37 provisions apply and are set out in Rule 37.5(b), *et seq.*