STATE of Arkansas *v.* Robert A. ROBBINS;
Bobbye Jeanne Robbins, Next Friend and Intervenor

CR 98-1394                                  5 S.W.3d 51

Supreme Court of Arkansas
Opinion delivered December 2, 1999

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Asst. Att'y Gen. and *Todd L. Newton*, Asst. Att'y Gen., for appellant.

No response from appellee.

*Jeff Rosenzweig*, for Next Friend/Intervenor.

R AY THORNTON, Justice. On June 17, 1998, Robert A. Robbins was sentenced to death for capital murder in Craighead County. On July 9, 1998, Robbins's stand-by attorney filed a notice of appeal. Robbins waived his right to appeal and the trial court found that he had the capacity to knowingly and intelligently waive his right to appeal his death sentence. On review we determined that the trial court's findings were not clearly erroneous and that because of Robbins's waiver of appeal there was no merit in stand-by counsel's request for reversal and a new sentencing phase of the trial.

On remand of the matter, Robbins waived his right to relief under the provisions of Rule 37 of the Arkansas Rules of Criminal Procedure, and the trial court found that he had the capacity to do so. No mental examination of Robbins was conducted at any time except that evaluation performed during the pretrial proceedings. Robbins was found competent to act as his own attorney during the trial and was determined to have the capacity to understand the difference between life and death and to knowingly and intelligently waive his rights to challenge a death penalty. He resisted suggestions from the trial court that he needed an attorney and stated that he wanted the death penalty to be imposed. The partial record before us relates only to the issue of his capacity to waive appeal of his death sentence and his right to postconviction relief.

No record of the trial itself or of the sentencing phase has been prepared or presented to this court for review. We affirmed the trial court's finding that Robbins had the capacity to waive his rights and he was scheduled for execution on April 12, 1999.

On March 17, 1999, Ms. Bobbye Jeanne Robbins, Robbins's mother, filed a "petition of next friend to recall mandates, for stay of execution, and for reexamination of legal and factual issues." We granted the request for a stay of execution, recalled our mandate, and ordered the following issues briefed:

> 1. Does Ms. Robbins have standing to intervene as a next friend for her son, and, if so, is it appropriate for us to consider her arguments at this time?
>
> 2. Should the entire record of the trial in which Mr. Robbins was found guilty and sentenced to death be reviewed to determine whether Mr. Robbins was competent to waive his right to appeal and his postconviction remedies under Rule 37?
>
> 3. Should this court overrule *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988), and its progeny, and impose mandatory review for trial error in all death-penalty cases regardless of whether the defendant desires such a review?
>
> 4. If this court imposes mandatory review of the trial errors in this case, should we then appoint an attorney *ad litem* for Mr. Robbins to ensure that the record is properly examined and all issues are briefed?

*State v. Robbins*, 337 Ark. 227, 987 S.W.2d 709 (1999). On October 21, 1999, these issues were briefed and orally argued. We have reconsidered the Arkansas statutes and our court rules and conclude that we must review the record of the trial in order to meet the requirements established by statutes and by our court rules[1].

Arkansas Code Annotated section 16-91-113 (a) (1987) states:

> (a) The Supreme Court need only review those matters briefed and argued by the appellant, *except that*, where either a sentence for *life imprisonment or death* has been imposed, *the Supreme Court shall review all errors prejudicial to the rights of the appellant.*

*Id.* (emphasis added). Moreover Arkansas Supreme Court Rule 4-3 (h) provides:

> When the sentence is death or life imprisonment, the Court must review all errors prejudicial to the appellant in accordance with

---

[1] *See, also State v. Robbins*, 336 Ark. 377, 985 S.W2d 296; *State v. Robbins*, 335 Ark. 380, 985 S.W2d 293 (1998) for other decisions in this matter.

Ark. Code Ann. Sec. 16-91-113 (a). To make that review possible, the appellant must abstract all rulings adverse to him or her made by the trial court on all objections, motions and requests made by either party, together with such parts of the record as are needed for an understanding of each adverse ruling. *The Attorney General* will make certain and certify that all of those objections have been abstracted and *will brief all points* argued by the appellant *and any other points that appear to involve prejudicial error.*

*Id.* (emphasis added).

To clearly address the issues before us, it is necessary to review some of our previous caselaw. In an effort to clarify the effect of the statute and our court rules upon the question of mandatory appeal of death sentences, we addressed the question of waiver of the right to appeal a death sentence in the case of *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988). In *Franz*, where a prison chaplain sought to appear and petition as next of friend in a death-sentence case, we established that a person sentenced to death could choose not to appeal that decision, provided that the defendant had the capacity to understand the difference between life and death and to knowingly and voluntarily waive his right to appeal. *Id.* The standing of Rev. Franz to raise the issue was less tenable than the standing of Robbins's mother in the present case. In *Franz*, we quoted with approval the following language from *Davis v. Austin*, 492 F.Supp. 273 (N.D. Ga. 1980):

The court must start with the proposition that members of the public in general do not have a right to intercede as "next friend" in an action such as this because they are morally or philosophically opposed to the death penalty. On the other end of the scale, close relatives, such as a parent, spouse, or sibling, who maintain a close personal relationship with the aggrieved, would be appropriate persons to maintain a "next friend" action.

*Id.* In *Franz*, we recognized that notwithstanding our conclusion that Rev. Franz lacked standing, we should address the issue presented. We stated:

However, as has often been noted, "the penalty of death is different in kind from any other punishment imposed under our system of criminal justice." *Gregg v. Georgia*, 428 U.S. 153, 188 (1976). Because of the punishment's uniqueness and irreversibility, we

choose to state clearly the law in Arkansas regarding the waiver of appeal in death cases.

*Franz, supra.*

As we did in Franz, we choose to review and state clearly the law in Arkansas regarding what responsibilities we have under the statutes of Arkansas and our own court rules to conduct our own review of the record in a case in which a sentence of death is imposed. In the limited circumstances of this case, involving a death sentence from which Robbins has waived his right to appeal, we accept his mother's petition for the limited purpose of further clarifying our duties and responsibilities.

In *Franz*, we held that a person sentenced to death could choose not to appeal that decision, provided the defendant had the capacity to understand the difference between life and death and to knowingly and voluntarily waive his right to appeal. That remains the law. However, that does not resolve the issue before us. Both statutes and our own rules have imposed *upon this court* the responsibility to review *the record for all errors* prejudicial to the rights of the appellant. Our rules also impose upon the Attorney General the responsibility of certifying that all objections have been abstracted and the duty to brief "any other points that appear to involve prejudicial errors." *See* Sup. Ct. R. 4-3 (h).

Whether Robbins may voluntarily waive his right to appeal was decided in *Franz*. Whether Robbins or any other person sentenced to death should have the power and authority to suspend the Arkansas statutes and our own court rules imposing duties and responsibilities upon the court itself is a different matter, and one we now address.

Recognizing that there must be adequate power in the judiciary to check the arbitrary and capricious imposition of a death sentence, we held in *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977), that those safeguards existed in Arkansas and stated:

> The Arkansas judiciary is vested with broad powers to check the arbitrary, capricious, wanton or freakish imposition of the death sentence by a jury. *Those powers exist at both trial and appellate levels.*

\* \* \*

In capital offenses, for many years all errors of the lower court prejudicial to the rights of appellant have been required to be heard and considered by this court and, if we found any prejudicial error by the trial court, this court was required to reverse and remand the cause for a new trial, or, in the discretion of this court, modify the judgment.[2]

. . . Appellate review of cases in which the death penalty has been imposed has always been more comprehensive than in other cases. *For, e.g.,* error in failure to properly instruct the jury with reference to punishments that it might impose has been held to be reversible, even though defendant did not request such an instruction.

*Id.* (citations omitted). We further held:

These sentencing and review procedures certainly leave no substantial risk that the death sentence will be imposed randomly, arbitrarily, capriciously, wantonly or freakishly, and tend to promote evenhanded, rational and consistent imposition of the death penalty.

*Id.*

The rationale of *Collins* was that no death-sentence case would fail to be reviewed as required by statutes and our court rules. Justice George Rose Smith, writing for the minority, pointed out that:

An effort is then made to show that our present laws in fact assure an appellate review in every case. As the majority observe, however, the review depends upon the trial judge and defense counsel's performance of duties imposed upon them by law or by professional obligation.

*Id.* More recently in *Greene v. State,* 335 Ark. 1, 977 S.W.2d 192 (1998), we held that:

When this Court reviews a death sentence, it must review the record in accordance with Ark. Code Ann. § 16-91-113(a) (1987) and Ark. Sup. Ct. R. 4-3(h) for all errors raised in the trial court

---

[2] Citing Ark. Stat. Ann. 43-2723 (Repl. 1964). This statute has been expanded to include a life sentence and we have construed it to mean that this mandated review required an examination of the trial record, even though the objectionable action which might be reversible error was not argued on appeal in any way. *Rorie v. State,* 215 Ark. 282, 220 S.W.2d 421 (1949); *Hays v. State,* 230 Ark. 731, 324 S.W.2d 520 (1959); *Young v. State,* 230 Ark. 737, 324 S.W.2d 524 (1959).

> that are prejudicial to the appellant regardless of whether the errors are raised on appeal. This review includes considering whether the evidence presented was sufficient to allow the jury to consider a statutory aggravating circumstance.

*Id.* (citations omitted).

After reviewing our previous caselaw and the pertinent statutes, we conclude that we have an affirmative duty to review the record in all death-penalty cases for prejudicial error. We note that this holding does not modify the holding of *Franz* that a person sentenced to death may waive his *personal* right to appeal. An automatic review by this court of the record in death-penalty cases based upon statutes, prior caselaw, and grounded upon the unique severity of a sentence of death does not interfere with a competent defendant's right to waive his right to appeal. Our holding in the present case is that we are required to review the record in all death-penalty cases for egregious and prejudicial errors.

Undertaking an automatic review of the entire record will be useful when we are evaluating whether Robbins's waiver of his right to appeal was proper under *Franz*. In addition, our review of the entire record will enable us to determine if: (1) any prejudicial errors have occurred; (2) whether plain errors covered by the exceptions outlined in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980) have occurred; and (3) whether other fundamental safeguards were followed. We continue to recognize our holding in *Franz* that a defendant may waive his personal right to an appeal and we do not disturb the rationale therein expressed that our responsibility to review sentences of *life imprisonment* depends upon a record being brought forward on appeal. However, we hereby clarify our responsibilities and affirmative duty to automatically review the record in death-sentence cases for errors such as those previously outlined, and we modify and overrule *Franz* to the extent that it conflicts with this decision.

Having determined that our duty to review death sentences is independent of and complimentary to the issue of whether an appeal can be waived, we next address the means by which the record is to be prepared and brought to us for review. For this issue we look to Justice Hays's dissent in *Franz*, where he articulated his appreciation for the distinction we now draw between the rights of

a defendant to waive his personal right to appeal, and our duty to review the record. Justice Hays stated:

> I do not question the right of a competent defendant to refrain from participating in an appeal, or to deny others the right to act in his behalf. But that right does not empower a defendant to by-pass appellate review any more than he could by-pass a trial or, if a plea of guilty is entered, a hearing on the guilty plea. These steps are basic, and where the sentence is death, appellate review is equally basic. By rejecting the opportunity to adopt a rule of mandatory review the majority has put Arkansas at odds with all but one of the thirty-seven states which have the death penalty, not an enviable position, and not one likely to endure.

*Franz, supra.* Justice Hays also suggested an approach that this court now adopts by which we may fulfill our obligations. He suggested that:

> . . . notwithstanding a waiver of appeal by the defendant, this court, on information from either the Attorney General or the trial court, that a death sentence has been imposed, would issue a writ of certiorari for the record and appoint counsel to argue any errors prejudicial to the defendant. The unique severity of the death sentence and the public interest in its imposition demand nothing less.

*Id.* Accordingly, we hold that it will henceforth be the practice of this court to issue a writ of certiorari for the record in all cases in which the death penalty has been imposed and the defendant has waived his right to appeal. We will then conduct a review of the record for prejudicial errors.

Based on our holding in this case, it is necessary for us to clarify our prior court procedures as they relate to review of death-penalty cases and to distinguish such cases from cases in which the defendant has received a sentence of life imprisonment. We now recognize that there is a distinction to be found in our Sup. Ct. R. 4-3(h) in our review of cases in which the death penalty has been imposed and cases in which a defendant has received a sentence of life imprisonment. When the defendant has received a sentence to life imprisonment it will continue to be his responsibility to bring forward an appeal. If such a defendant chooses to bring his case to us for review we will conduct a proper 4-3(h) review. By contrast, we now recognize that we are required to perform an automatic

review of the record in all cases in which the death penalty has been imposed and we will review the record not only as provided in our rule 4–3(h), but also for egregious errors such as those that fall within our exception to the plain-error rule as articulated in *Wicks, supra*. Jurisprudence has long respected the great difference between the imposition of the death penalty and a life sentence in prison, and this court noted the "unique severity" of the death penalty in *Franz. See Franz, supra*. Moreover, Rules 24.4 and 31.4 of the Arkansas Rules of Criminal Procedure recognize the fundamentally different treatment which is applicable to cases in which the death penalty is sought. The rules provides in pertinent part:

> (e) that if he pleads guilty or nolo contendere he waives his right to a trial by jury and the right to be confronted with the witnesses against him, except in capital cases *where the death penalty is sought.*

Ark. R. Crim. P. 24.4 (emphasis added). Additionally, Rule 31.4 states:

> No defendant charged with a capital felony may waive either trial by jury on the issue of guilt or the right to have sentence determined by a jury unless:
>
> (b) the prosecuting attorney, with the permission of the court, has waived the death penalty.

Ark. R. Crim. P. 31.4.Thus, because we acknowledge that the death penalty carries with it a unique and irreversible punishment with consequences far removed from the imposition of life imprisonment, we hold that our decision to automatically review the record only applies to cases in which the death penalty has been imposed.

This type of automatic review is currently in place in other jurisdictions. *See* U.S. Dept. of Justice, Bureau of Justice Statistics, Bull., Capital Punishment, 1997 (Dec. 1997)[3]. In *State v. Brewer*, 170 Ariz. 486, 826 P.2d 783, *cert. denied*, 506 U.S. 872 (1992), the Arizona Supreme Court explained:

---

[3] This bulletin notes that as of 1997 of the thirty-eight states with capital punishment thirty-six provided for review of the death sentence regardless of the defendant's wishes. The two states without automatic review included Arkansas and South Carolina.

> Appellate review of sentencing is . . even more necessary in the context of a capital case. The penalty of death differs from all other forms of criminal punishment in terms of severity and irrevocability, and may not be exacted in the absence of certain constitutional safeguards. . . .The automatic appeal mechanism guarantees this court both the opportunity and the vehicle to assess the legality of the sentence in each capital case. . . The severity of the death penalty requires that we undertake an extensive, independent review of each death sentence handed down. . .

*Id*. (citations omitted, quotation marks omitted).

We conclude that an automatic review is necessary when a death sentence is imposed. Here we have no record before us reflecting whether a jury lawfully imposed the sentence of death upon Robbins and we remand this case for preparation of the record. We further issue a writ of certiorari for the record after it is completed so that we may conduct our review. We appoint Ms. Robbins's counsel to assist in our review by arguing to us any prejudicial errors.

Writ of certiorari issued.

GLAZE, CORBIN, and SMITH, JJ., dissent.

TOM GLAZE, Justice, dissenting. I must dissent. The majority court indicates Robert A. Robbins's mother, Bobbye Jeanne Robbins, has no standing to intervene as next friend, and on this point the majority court is correct because the appellant has been found competent to represent himself and to waive his right to appeal. *See Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988). Accordingly, Mrs. Robbins is not a party to this litigation and clearly has no standing to appeal and raise any issues or arguments on appellant's behalf. Even so, the majority, without any citation of authority, allows Mrs. Robbins to argue (1) whether Mr. Robbins was competent to waive his right to appeal and postconviction remedies, (2) whether the *Franz* decision should be overruled, (3) whether a mandatory review in death-penalty cases should be imposed, and (4) whether Mr. Robbins should be appointed an attorney ad litem. Because Mrs. Robbins's petition must be dismissed, leaving no one to argue the foregoing issues, the majority court is clearly wrong in its considering and deciding these issues.

If this court wishes to require mandatory review in death-penalty cases, it should do so by promulgating a court rule, which it has authority to do. Instead, the majority court is reviewing the issues in this case by eviscerating its appellate rules and well-established precedent. The majority opinion seems to suggest that the *Franz* decision permits this court to consider any issues it chooses to reach in a death-penalty case. Not so.

In *Franz*, the Rev. Louis J. Franz petitioned this court to proceed on behalf of Ronald Gene Simmons and asked the court to stay Simmons's execution and to make appeals mandatory in death cases. Simmons made an appearance and filed a response, stating among other things that he sought no relief except to be left alone to waive his right of appeal. *See Gilmore v. Utah*, 429 U.S. 1012 (1976). Simmons further answered, stating that he had been declared competent and that he had made an informed choice of death over life. Citing *Collins v. State*, 261 Ark. 195, 211m 548 S.W.2d 106, 115 cert. denied, 434 U.S. 878 (1977), he claimed no mandatory appeals were required under the Eighth and Fourteenth Amendments. We affirmed the *Collins* holding in *Franz. Franz*, 296 Ark. at 188, 754 S.W.2d at 842.

Here, unlike in *Franz*, the defendant (Robert A. Robbins) has made no appearance and has offered no arguments. Instead, Mr. Robbins obviously relies on the record which reflects he has given a knowing, intelligent, and voluntary waiver of his right to a direct appeal and appointment of postconviction counsel. The language in our statute and court rules *only* contemplates a review when death-penalty defendants choose to exercise their right to appeal. *See* Ark. Code Ann. § 16-91-113(a); Ark. R. App. P.—Crim. 14 (1999); Ark. Sup. Ct. R. 4-3(h) (1999). As the Attorney General makes clear, Mr. Robbins's access to court has in no way been impeded, but he has initiated no appeal. In fact, this court has previously reviewed this matter and assured itself that the proof demonstrated Mr. Robbins knowingly and intelligently waived his right to appeal. *See State v. Robbins*, 335 Ark. 380, 985 S.W.2d 293 (1998).

In conclusion, this proceeding, as the majority court conducts it, is a curious one, indeed, since Mr. Robbins has not appeared or responded in it and Mrs. Robbins's request to intervene has been properly rejected. No one is left in this case to seek the relief the majority so readily grants. The majority unhesitatingly proceeds to

consider and decide issues no one has the standing to raise. This simply is not sound jurisprudence. Again, if the majority feels strongly that appellate reviews should be mandated in death-penalty cases, it should do so by rule, not by adopting such a procedure or rule in a proceeding that rightfully should be dismissed. Today's opinion is purely advisory and conflicts with this court's *Franz* decision. At this time, for the reasons given above, I believe *Franz* is controlling and that the court should dismiss Mrs. Robbins's petition and this proceeding.

CORBIN and SMITH, JJ., join this dissent.