STATE of Arkansas *v.* Robert A. ROBBINS

CR 98-1394                                    27 S.W.3d 419

Supreme Court of Arkansas
Opinion delivered October 5, 2000

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellant.

*Lea Ellen Fowler*, for appellee.

LAVENSKI R. SMITH, Justice. Robert A. Robbins was convicted of the capital murder of Bethany White and sentenced to death by a Craighead County jury on June 17, 1998. He did not appeal. This is an automatic review of the entire capital-murder conviction and death-sentence record pursuant to the procedure this court set out in *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999). We find no error.

### Procedural History

Since Robbins's sentencing, we have examined aspects of this case on five previous occasions. In *Robbins I* this court reviewed the record of the hearing on Robbins's decision to waive his right to appeal. *State v. Robbins*, 335 Ark. 380, 985 S.W.2d 293 (1998). Under the analysis set out in *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988), we held that Robbins's knowingly and intelligently waived his appeal rights, including his rights under Rule 37.5. In *Robbins II*, we clarified our January 14, 1999, mandate in response to the State's motion to dissolve the stay of execution. *State v. Robbins*, 336 Ark. 377, 985 S.W.2d 296 (1999).

Subsequently, in *Robbins III*, we stayed the execution and ordered briefing on four specific issues raised by a "petition of next friend to recall mandate, for stay of execution and for reexamination of legal and factual issues," filed by Robbins's mother. *State v. Robbins*, 337 Ark. 227, 987 S.W.2d 709 (1999). *Robbins IV* addressed those issues, and although we denied Mrs. Robbins's intervention as a next friend, the ·court nonetheless declared that existing law[1] required an automatic review of the entire record in all death-penalty cases for egregious and prejudicial error. *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999). *Robbins IV* overruled *Franz* to the extent it might be argued to give an appellant the ability to waive anything other than his personal right to appeal. Otherwise, *Franz* is unchanged. In addition to any applicable *Franz* analysis, the entire record will be reviewed, and the court is to determine if: (1) any prejudicial errors have occurred; (2) whether plain errors covered by the exceptions outlined in *Wicks v. State*, 270 Ark. 781, 606

---

[1] Ark. Code Ann. 16-91-113(a)(Supp. 1999) and Ark. S. Ct. R. 4-3(h).

S.W.2d 366 (1980), have occurred; and (3) whether other funda-
mental safeguards were followed. Finally, *Robbins V* merely clarified
the duty of appointed counsel in preparation for the present review.
*State v. Robbins*, 340 Ark. 255, 9 S.W.3d 500 (2000).

*Facts*

The evidence in the record below reveals the following facts.
Robbins dated White about a year and a half when Bethany
attempted to end her relationship with Robbins.   On at least one
occasion during the relationship, Robbins assaulted Bethany, and
then sought psychological help for his anger. Bethany began dating
others.   Robbins became obsessed with Bethany and neglected
other aspects of his life such as his academic studies. Robbins
concluded that he could not stand for Bethany to date anyone but
him, and that if she would not be his girlfriend, she would be no
one's girlfriend. Robbins planned Bethany's murder for several
weeks.   He wrote down some of his plans in a journal kept on his
personal computer.   In anticipation of the murder, he purchased a
roll of duct tape to use in its commission.

On the evening of November 4, 1997, Robbins drove from
Fayetteville, where he was attending college, to his home in Jones-
boro for the express purpose of killing Bethany. He chose this time
because he believed he could kill her when her mother would be
gone from the home where Bethany and her mother lived.   After
arriving in Jonesboro, Robbins first tried to get Bethany to go out
to lunch with him, but Bethany refused his invitation. Bethany
showed apprehension about Robbins's presence and asked a co-
worker to notify security if she saw him. Robbins went to Bethany's
workplace near closing time.   He sat outside and waited for her.
Bethany and her co-worker saw him. Rather than call security,
however, Bethany decided to go with Robbins, and apparently
willingly left her job with him at about 9:50 p.m.   Robbins drove
Bethany to her home.

When they arrived, Bethany refused to allow Robbins to go
inside the home with her.   Robbins deceived Bethany about his
intentions to go inside by saying he would not. Then, just as she
opened the door, he forced his way inside.   Bethany went to the
kitchen to call the police.   Robbins followed, took the phone and

put it down, and tried to touch Bethany's face. She brushed his hand away, and he knocked her down. She hit her head on a step ladder as she fell. Robbins confessed that he then attacked Bethany and strangled her until his hands turned blue and he could no longer control them. According to Robbins, he tried to strangle her until his hands hurt. However, the medical examiner's report showed that the bruising on the victim was more consistent with a forearm choking from behind. Robbins confessed he then attempted to break Bethany's neck by twisting or turning it beyond the movement of the neck's normal range of motion. The autopsy confirmed that the victim's neck had indeed been broken.

Being uncertain of her death, Robbins stated that he then took a kitchen knife and attempted to thrust it up her nasal passage to "scramble her brains." The autopsy report did not show any injury to Bethany's nasal cavity. However, Robbins did stab the victim several times in the chest with a kitchen knife. He indicated that concern about Bethany's mother's return led him "to find a way to kind of wrap this up." He then went to his car and retrieved the roll of duct tape he had purchased to use in the murder. He wrapped duct tape over Bethany's mouth and nose, making certain no air could enter. According to the medical examiner, he succeeded in suffocating her.

Robbins stated that he then went upstairs to find a ring he had given Bethany and instead found a decorative or novelty sword. He went back down stairs and tried to thrust the sword through her chest into her heart, but the sword bent and would not penetrate. Finally, apparently believing he had fatally injured Bethany, Robbins placed a fortune cookie paper he received earlier at a restaurant on Bethany's chest. The paper read, "You will soon have an opportunity to make a change to your advantage." Robbins states he then sat down at the kitchen table, smoked a cigarette, and drank a soda while he waited, wanting to be sure Bethany was dead before he left her body, which he believed her mother would soon discover.

Robbins left the scene and used his cellular telephone to call 911 and report the murder. Robbins spoke at length with Deputy Kenny Pique of the Poinsett County Sheriff's Department. Robbins related in painstaking detail how he had planned and carried out the murder of his girl friend. Although identifying himself,

Robbins refused, however, to identify the victim or give her whereabouts so that he could be sure she could not be rescued. Robbins's statements to police indicated he relished the killing, and in fact, would probably kill again to experience the same excitement. Eventually, at about midnight Robbins gave the victim's name and address to police who went to the home and found the victim. As police worked the crime scene, Robbins called Bethany's house, identified himself, and again confessed. The police apprehended Robbins later that day in Conway County.

The police returned Robbins to Jonesboro, and the prosecutor charged him with capital murder[2] on November 5, 1997. The State gave notice it intended to seek the death penalty. Following arraignment, Dr. Michael Simon, pursuant to court order, examined Robbins for competence to stand trial as well as competence to be executed. The circuit court held a hearing on Robbins's fitness to proceed to trial on June 5, 1998, and based upon Dr. Simon's testimony, the court found him competent.

Robbins's trial began on June 15, 1998. Robbins steadfastly insisted on waiving his right to counsel. The court permitted him to do so. However, the trial court, in an abundance of caution, appointed three attorneys as standby counsel to advise and assist him. At trial, Robbins participated in the selection of the jury, gave an opening statement, cross-examined witnesses and gave a closing argument. Jury selection consumed all of the first day of trial and part of the second day. After the preliminary phases, the state introduced the testimony of thirteen witnesses. These witnesses included those who saw the defendant with the victim, heard Robbins's confessions, arrested him, investigated the crime scene, examined evidence, and conducted the post-mortem on the victim. Robbins offered no witnesses. After receiving the court's instructions, the jury deliberated and found Robbins guilty of capital murder.

In the penalty phase of the trial the State offered one witness, Jan White, mother of the victim. She gave victim- impact testimony and talked about the life of her daughter and how much she was missed. Robbins cross-examined the mother, but the court sustained objections made by the State to questions Robbins asked

---

[2] Ark. Code Ann. § 5-10-101(4)(Repl. 1997).

due to their irrelevance and insensitivity. Robbins offered no mitigating evidence. Indeed, he made plain to the jury throughout the trial that he believed his actions warranted imposition of the death penalty. The jury again deliberated and recommended a sentence of death.

## Franz *Analysis*

■ In *Robbins IV*, this court indicated a review of the entire record would be useful in evaluating whether Robbins's properly waived his right to appeal under *Franz*. However, we note that the court has already conducted a *Franz* analysis in *Robbins I*. There, we held that Robbins knowingly and intelligently waived his right to appeal. Upon review of the entire record, there is nothing in the record below to invalidate that holding. *Robbins IV* served to qualify *Franz* such that a defendant can only waive his personal right to appeal. It did not alter our earlier determination that Robbins validly waived his appeal rights.

## *Prejudicial Errors*

■ A review of the record reveals few adverse rulings to consider. Counsel appointed to abstract the record and prepare a brief for this court's review of this death sentence brings one issue to the court's attention. She notes an objection by standby counsel to the State's refusal to allow Robbins to plead guilty and proceed to sentencing by the jury. This discussion involved Ark. Code Ann. § 16-97-101(6)(Supp. 1999) which standby counsel argued appeared to give a criminal defendant the right to make a guilty plea and then be sentenced by a jury. Counsel challenged the constitutionality of Arkansas's capital-murder statute in that Ark. Code Ann. § 5-4-602 (Repl. 1997) requires a jury to hear all evidence relevant to the charge. The trial court overruled the objection. It did so correctly. A criminal defendant in Arkansas does not have the right to plead guilty and waive a trial by jury unless the prosecutor and the court agree. *State v. Smittie*, 341 Ark. 909, 20 S.W.3d 352 (2000). Additionally, Ark. R. Crim. P. 31.4 is on point and provides specifically that a defendant charged in a capital felony may not waive trial by jury on the issue of guilt or sentence unless the prosecutor agrees.

■ We also hold that the trial court did not err in sustaining the State's objection on the basis of relevance to Robbins's cross-examination of Bethany's mother about her daughter's wedding plans during the penalty phase. There was no abuse of discretion nor did prejudice result to the defendant. An analysis of any remaining adverse rulings on objections, motions, and requests by appellant pursuant to Ark. Sup. Ct. R. 4-3(h) reveals no prejudicial error.

## Plain Error

■ ■ Arkansas does not recognize plain error, i.e. an error not brought to the attention of the trial court by objection but nonetheless affecting substantial rights of the defendant. *State v. Montague,* 341 Ark. 144, 14 S.W.3d 867(2000). However, we have adopted limited exceptions. *See Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980). In *Robbins* IV, this court also mandated consideration of the *Wicks* exceptions in death-penalty cases like the instant case where the defendant has waived appeal. These exceptions are (1) a trial court's failure to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) error by the trial judge of which the defense has no knowledge and therefore no opportunity to object; (3) a trial court's failure to intervene without objection and correct a serious error by admonition or declaring a mistrial; and (4) failure of the trial court to take notice of errors affecting substantial rights in a ruling admitting or excluding evidence, even though there is no objection. Our review of the record reveals no errors under the *Wicks* exceptions to the rule in Arkansas that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court.

## Fundamental Safeguards

■ The third and final review requirement under *Robbins IV* is to determine whether other fundamental safeguards were followed. The term "fundamental safeguards" was not defined in *Robbins IV* nor do we attempt to definitively state their limitations here. Suffice it to say, nothing in the instant record reveals any irregularity in procedure that would call into question the essential fairness of the process afforded the defendant.

### Robbins' Desire for the Death Penalty

■ ■ This case is unique. From its inception, the defendant not only did not oppose but has actively sought imposition of the death penalty as the appropriate sanction for his criminal conduct. This, coupled with his decision to represent himself at trial, means that the adversarial process characteristic of the criminal justice system proceeded differently. That the jury ultimately sentenced Robbins to death is not evidence that they acceded to his wishes. The jury is presumed to follow the court's instructions. *Logan v. State*, 300 Ark. 35, 776 S.W.2d 341 (1989). In voir dire, the trial judge specifically cautioned prospective jurors that Robbins was seeking his own death, and were asked if they would consider the facts and follow the court's instructions rather than accede to Robbins's wishes. They indicated they would. There is nothing in the record to indicate that the jury did otherwise. Neither passion nor prejudice appear to have played any role in the outcome of their deliberations. The jurors determined that the defendant's actions constituted capital murder and that under Arkansas law the aggravating circumstances outweighed any mitigating circumstances thus warranting imposition of the death penalty. The mere fact that the defendant's wishes were consistent with the jury's determination does not invalidate their verdict.

Affirmed.

GLAZE, J., dissents; *see Robbins v. State*, 339 Ark. 379, 389, 5 S.W.3d 51, 57 (1999).