2013 Ark. 57

Karl Douglas ROBERTS, Petitioner

v.

STATE of Arkansas, Respondent.

No. CR 03–780.

Supreme Court of Arkansas.

Feb. 14, 2013.

Deborah Anne Czuba, for appellant.

Dustin McDaniel, Att'y Gen., by Laura Shue, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice.

Petitioner Karl Roberts moves this court to reopen the proceedings and to reinvest the circuit court with jurisdiction to hear his postconviction petition pursuant to Arkansas Rule of Criminal Procedure 37.5 (2012).[1] While Roberts previously waived his right to seek post-conviction relief, he now seeks to rescind that waiver and asserts that a mandatory review should be extended to postconviction proceedings in death cases; his prior waiver was invalid and involuntary; and a rejection of his attempt to rescind his waiver would violate "the solid footing doctrine." We grant Roberts's motion.

In May 2000, Roberts was convicted of capital murder and sentenced to the death penalty for the murder of twelve-year-old Andria Brewer. Following his conviction, Roberts filed a waiver of his right to appeal and postconviction review. A hearing was held on Roberts's waiver on July 19, 2000, and the circuit court found that Roberts had the capacity to knowingly and intelligently waive his appeal rights. We conducted an automatic review of the entire record pursuant to *State v. Robbins,* 339 Ark. 379, 5 S.W.3d 51 (1999), and we affirmed Roberts's waiver of his right to appeal, as well as his conviction and sentence. *See Roberts v. State,* 352 Ark. 489, 102 S.W.3d 482 (2003).

On May 20, 2003, the circuit court held a hearing pursuant to Ark. R.Crim. P. 37.5. At the hearing, Roberts appeared pro se and waived his right to seek postconviction relief. The circuit court concluded that Roberts had the capacity and was clearly competent to knowingly and intelligently do so, and it found so in its order. The State moved this court to review the record of Roberts's waiver hearing, and this court granted the motion, affirming the circuit court's findings. *See State v. Roberts,* 354 Ark. 399, 123 S.W.3d 881 (2003) (per curiam).

---

1. Also decided this same day are Roberts's motion to recall the mandatory-review mandate and a petition to reinvest the circuit court with jurisdiction to consider a petition for writ of error coram nobis, which were submitted simultaneously with the instant petition. *See Roberts v. State,* 2013 Ark. 56, 425 S.W.3d 771.

On January 6, 2004, Roberts moved for a stay of execution in the United States District Court for the Eastern District of Arkansas, which was granted.[2] Roberts then filed, on July 16, 2004, a petition for writ of habeas corpus with the federal district court. However, in 2007, the federal district court stayed Roberts's case and held it in abeyance, directing Roberts to seek relief in the state courts regarding all unexhausted claims, by February 1, 2008. *See Roberts v. Norris,* 526 F.Supp.2d 926 (E.D.Ark.2007).

On February 1, 2008, Roberts filed in the circuit court a petition for postconviction relief, which the circuit court denied without an evidentiary hearing. Roberts appealed from the circuit court's order, and we dismissed the appeal without prejudice for lack of jurisdiction, holding that "where the ninety-day filing period under Rule 37.5(e) has expired and a waiver of postconviction relief has been affirmed by this court, a petitioner must file the appropriate motion to reopen postconviction proceedings before a Rule 37 petition can be brought in circuit court." *Roberts v. State,* 2011 Ark. 502, at 9, 385 S.W.3d 792, 794. Roberts then filed on January 3, 2012, the instant motion to reopen the proceedings and to reinvest the circuit court with jurisdiction. We directed that the motion be submitted as a case, and a briefing schedule was established.

 Roberts asserts several bases on which this court should reopen his postconviction proceedings and reinvest jurisdiction in the circuit court. Roberts first contends that this court should permit him to simply rescind his prior waiver, claiming that this court twice permitted previous appellants to pursue postconviction relief after a waiver of postconviction review. He further contends, alternatively, that if the rescission of his waiver is insufficient to grant reopening, this court should grant his motion and establish a mandatory postconviction proceeding and review for death-penalty defendants who waive their postconviction rights. Roberts also argues that his motion should be granted because his waiver of his postconviction rights was invalid. Finally, he claims that, because acceptance of his prior waiver violates what he deems "the solid footing doctrine," this court should grant his motion to reopen the proceedings.

The State counters that Roberts's attempt to rescind his waiver is untimely, averring that Roberts's time in which to file a petition pursuant to Rule 37.5 has long since expired. It urges that Roberts's case is distinguishable from other cases in which we have permitted the rescission of a waiver of postconviction rights, contending that a petitioner's belated change of heart is not a sufficient ground on which to frustrate the finality of judgment. The State further rejects Roberts's efforts to persuade this court to adopt and engage in mandatory postconviction review. The State maintains that the record supports a finding that Roberts's waiver of postconviction relief was valid, in light of the full and fair hearings before the circuit court. Finally, the State contends, acceptance of Roberts's waiver in no way violates what Roberts terms "the solid footing doctrine." For these reasons, the State claims, Roberts's motion to reopen the proceedings should be denied.

Roberts first avers that this court should grant his motion to reopen based simply on the fact that he has now rescinded his prior waiver of his postconviction rights. He points to this court's decisions in the *Greene* and *Robbins* cases, claiming that in both instances, we allowed Greene

**2.** The stay of execution was extended and later stayed indefinitely on July 23, 2004.

and Robbins to rescind their previously affirmed waivers of postconviction review. Roberts's reliance on these two lines of cases is misplaced, however, as both cases differ procedurally from Roberts's.

In Greene's case, this court did affirm the circuit court's findings of his competency to waive his appellate and postconviction rights, which he waived on July 2, 1999. *See State v. Greene*, 338 Ark. 806, 1 S.W.3d 442 (1999) (per curiam). However, prior to that decision, we had vacated Greene's sentence and remanded his case for resentencing. *See Greene v. State*, 335 Ark. 1, 977 S.W.2d 192 (1998). In his appeal from that resentencing, wherein we affirmed his sentence of death, it was noted in our supplemental opinion on denial of rehearing that Greene had rescinded his waiver on December 2, 1999, which was after our affirmation of the waiver but prior to our hearing his appeal from resentencing. *See Greene v. State*, 343 Ark. 526, 37 S.W.3d 579 (2001). Once Greene's sentence of death was affirmed, he was permitted to seek postconviction relief, as set forth in Ark. R.Crim. P. 37.5(b) (2001). Thus, while Greene had rescinded his waiver, his postconviction petition, more importantly, was timely.

The same holds true in the *Robbins* line of cases. There, we granted, by formal order of January 14, 1999, the State's motion for review seeking affirmation of Robbins's waiver of postconviction relief. Upon the State's motion for clarification of that order, we held that "[w]hen we granted the State's motion for review . . ., we implicitly upheld the trial court's finding that Mr. Robbins knowingly and intelligently waived his right to appointment of an attorney under Rule 37.5." *State v.*

*Robbins*, 336 Ark. 377, 378, 985 S.W.2d 296, 297 (1999) (per curiam). We later recalled the mandate of January 14, 1999, on the motion of Robbins's mother, who filed a next-friend petition seeking mandatory review of all death-penalty cases.[3] *See State v. Robbins*, 337 Ark. 227, 987 S.W.2d 709 (1999) (per curiam). Following our automatic review of Robbins's conviction and sentence, which were affirmed in *State v. Robbins*, 342 Ark. 262, 27 S.W.3d 419 (2000), Robbins petitioned this court to reopen his case, and we granted his motion for the reasons set forth in *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003), and ordered the record supplemented. We subsequently affirmed Robbins's death sentence. *See Robbins v. State*, 356 Ark. 225, 149 S.W.3d 871 (2004). Following our affirmance, Robbins filed a motion for clarification concerning his postconviction rights, and we granted the motion by letter order of April 8, 2004, stating that Robbins was "permitted to pursue post-conviction relief under Ark. R.Crim. P. 37.5." Again, as was the case in *Greene*, Robbins's previous waiver of postconviction relief was set aside by virtue of our recall of the affirmation-of-waiver mandate, but in addition, a postconviction petition was permitted under our rules following our affirmation of Robbins's sentence. *See* Ark. R.Crim. P. 37.5(b) (2004).

In contrast, Roberts's conviction and sentence were affirmed by this court in *Roberts*, 352 Ark. 489, 102 S.W.3d 482, wherein we also affirmed the circuit court's finding that Roberts knowingly and intelligently waived his rights of appeal. In accordance with Ark. R.Crim. P. 37.5(b) (2003), the circuit court held a hearing, at which it found that Roberts waived his

---

**3.** While *Robbins*, 337 Ark. at 228, 987 S.W.2d at 709, states our recall of the "December 22, 1998 mandate," both the docket in the matter and *Robbins*, 336 Ark. 377, 985 S.W.2d 296, make clear that the State's motion for review was filed December 22, 1998, and that we granted the motion on January 14, 1999, issuing the mandate the same day.

postconviction rights. *See Roberts,* 354 Ark. 399, 123 S.W.3d 881. This court then granted the State's motion to review the proceedings and affirmed the circuit court's findings. *See id.* While Roberts filed a petition for postconviction relief in the circuit court in 2008, which was denied, we dismissed his appeal from that denial without prejudice, holding that he was required to first file a petition to reopen his case with this court. *See Roberts,* 2011 Ark. 502, 385 S.W.3d 792. It is only now that Roberts attempts to rescind his waiver, and he claims that his waiver alone should serve as the basis for reopening his case. But it was not the mere rescission of waiver that permitted Greene and Robbins to file |₇postconviction petitions, it was also the fact that in both of those cases, the parties were procedurally permitted to file for postconviction relief under our rules. It is on this basis that Roberts's case is distinguished from those of Greene and Robbins, and we hold that his rescission of waiver is not, by itself, a basis on which to reopen his case.

◼ Because we reject Roberts's notion that his rescission of waiver alone is a sufficient basis on which to grant his petition to reopen, the question thus becomes, what showing is required of Roberts for this court to grant his motion to reopen the proceedings. We have equated recalling a mandate to reopening a case. *See Robbins,* 353 Ark. 556, 114 S.W.3d 217. To establish the extraordinary circumstances that would warrant the recall of a mandate or the reopening of a case, we have recognized and enumerated certain factors to be considered, namely: (1) the presence of a defect in the appellate pro-

cess, (2) a dismissal of proceedings in federal court because of unexhausted state-court claims, and (3) the appeal is a death case that requires heightened scrutiny. *See id.; Wooten v. State,* 2010 Ark. 467, 370 S.W.3d 475; *Kemp v. State,* 2009 Ark. 631, 2009 WL 4876473. We have further observed that we do not recall a mandate so that a petitioner whose initial postconviction proceedings were procedurally sound may file a subsequent petition for relief; rather, the mandate is recalled in extraordinary cases, so that a petitioner whose first postconviction proceedings were procedurally flawed may file a new petition and receive the procedural safeguards of Rule 37.5. *See Anderson v. State,* 2011 Ark. 488, 385 S.W.3d 783.

It is clear that Roberts's case meets two of the three factors established by this court for reopening a case. First, Roberts was sentenced to death, so his case is one requiring |₈heightened scrutiny. *See, e.g., Williams v. State,* 2011 Ark. 534, 2011 WL 6275536. Second, Roberts's federal habeas petition was stayed and held in abeyance by the federal district court in 2007 so that Roberts could seek relief in state court regarding any unexhausted claims, as permitted by *Rhines v. Weber,* 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005).[4] *See Roberts,* 526 F.Supp.2d 926. Such action by a federal court has been previously recognized by this court as fulfilling the second requirement. *See Lee v. State,* 367 Ark. 84, 238 S.W.3d 52 (2006).

We turn then to whether Roberts has satisfied the criteria of demonstrating a defect in the appellate process. Roberts claims that because *no relevant or contemporaneous mental evaluation was conduct-*

---

4. The exhibits filed with the instant motion to reopen reflect that the federal district court entered an order December 12, 2011, in which it ordered that its " 'stay and abey' order entered on December 13, 2007 (filing 56), is unchanged and will remain in full force and effect." *See Roberts v. Norris,* 526 F.Supp.2d 926 (E.D.Ark.2011) (order extending "stay and abey").

ed at the time of his waiver of postconviction relief, his waiver was invalid. He asserts that a timely mental evaluation, for the specific purpose of assessing a death-row inmate's competency to waive postconviction review, must be conducted before such a waiver.

In our state, a defendant sentenced to death will be able to forego a state appeal only if he has been judicially determined to have the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence. *See Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988), *overruled on other grounds by State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999). This same standard governs the waiver of rights to postconviction remedies following the affirmance of a death sentence. *See Willett v. State*, 337 Ark. 457, 989 S.W.2d 508 (1999) (per curiam). Furthermore, we have held that it is error to allow a waiver of postconviction relief without a competency examination to determine whether the defendant had the capacity to choose between life and death and to knowingly and intelligently waive all rights to postconviction review of the death sentence. *See id.*

We have also recognized the necessity of a recent mental-health evaluation for defendants who wish to waive their appeal or postconviction rights. In *State v. Newman*, 355 Ark. 265, 132 S.W.3d 759 (2003) (per curiam), this court was presented with the State's petition to review the record of Newman's waiver-of-postconviction-relief hearing and to affirm the circuit court's order, which found that Newman had knowingly, intelligently, and voluntarily waived his rights to postconviction relief. We noted the record's reflection that New-

man was under the influence of certain medication at the time of the hearing, and we remanded the matter to the circuit court for the purpose of obtaining a mental-health evaluation of Newman. We further observed that, while the record reflected an evaluation of Newman prior to his trial and that he was found competent to stand trial in June 2002, "[b]ecause that evaluation is so remote in time from the waiver hearing, which occurred over one year later, we believe that a second evaluation is warranted." *Id.* at 267, 132 S.W.3d at 760. Accordingly, we directed the circuit court to order the Arkansas State Hospital to conduct an evaluation of Newman for the purpose of determining his competence to proceed under Rule 37.5 and noted that once the evaluation was filed, a new hearing should be had and a new order entered.[5] *See id.*

This court reviewed Roberts's waiver of postconviction relief in *Roberts*, 354 Ark. 399, 123 S.W.3d 881. There, we noted our affirmance of Roberts's conviction and sentence in *Roberts*, 352 Ark. 489, 102 S.W.3d 482, and that a hearing was subsequently had by the circuit court on May 20, 2003, pursuant to Ark. R.Crim. P. 37.5. We further observed that the circuit court, prior to finding that Roberts's waiver of postconviction relief was knowing and intelligent, reviewed the trial testimony of the following witnesses: "Charles Mallory, Ph. D., a staff psychologist with the Arkansas State Hospital; Reginald John Rutherford, M.D., a neurologist; Lee Archer, M.D., a staff member of the University of Arkansas for Medical Sciences; Mary M.C. Wetherby, Ph.D., a psychologist; and Danny Davis, former employer of Roberts." *Roberts*, 354 Ark. at 400, 123 S.W.3d at 882. We noted that the circuit court had

5. It is worth noting that our decision recognizing the lack of a recent evaluation in *Newman* was delivered less than two months after our decision affirming Roberts's waiver of postconviction relief.

reviewed the transcript of other trial testimony relevant to Roberts's competency, as well as the transcript of the posttrial hearing on July 19, 2000, at which Roberts waived his right of appeal.[6] *See id.*

*A* review of Roberts's record reveals, however, that the trial testimony of these individuals was based on evaluations completed years prior to the 2003 hearing at which Roberts waived his postconviction rights. Dr. Archer, a neurologist with the University of |₁₁Arkansas for Medical Sciences, testified that he met with Roberts on February 10, 2000, and Dr. Wetherby, a neuropsychologist, testified that she performed a neuropsychological evaluation of Roberts on September 10, 1999. Dr. Rutherford, a clinical neurologist, testified that he did not examine Roberts, but reviewed Dr. Wetherby's evaluation and the forensic evaluation by the Arkansas State Hospital. And Dr. Mallory, a staff psychologist with the Forensic Services Unit of the Arkansas State Hospital, testified that he examined Roberts between August 9 and 12, 1999. It is clear, therefore, that these examinations were so remote in time from Roberts's waiver-of-postconviction-rights hearing in 2003 that a second evaluation was warranted in accord with our case law. *See, e.g., Newman,* 355 Ark. 265, 132 S.W.3d 759; *Greene v. State,* 327 Ark. 511, 939 S.W.2d 834 (1997) (per curiam).

■ Furthermore, a more recent evaluation was warranted in light of the fact that the 1999 evaluation conducted by the Arkansas State Hospital examined Roberts for only fitness to proceed, criminal responsibility, criminal culpability, and diagnosis of mental disease or illness. We

have been clear that the standard for competency to stand trial is not the equivalent of competency to elect execution. *See Willett,* 337 Ark. 457, 989 S.W.2d 508; *Greene,* 327 Ark. 511, 939 S.W.2d 834; *Franz,* 296 Ark. 181, 754 S.W.2d 839. And, as already set forth, our standard for determining whether a defendant has voluntarily and intelligently waived his postconviction rights requires a judicial determination that the defendant has the capacity to choose between life and death and to knowingly and intelligently waive all rights to postconviction review. *See Willett,* 337 Ark. 457, 989 S.W.2d 508. It is clear from the instant record that Roberts was never examined for the purpose of making that inquiry.

■ |₁₂We therefore hold that an evaluation, more recent in time and for the purpose of inquiring whether Roberts had the capacity to choose between life and death and to knowingly and intelligently waive all rights to postconviction relief, prior to Roberts's waiver of postconviction rights was necessary to adequately determine Roberts's competency to elect execution and waive his right to postconviction remedies. That this court neglected to identify the lack of such an evaluation when it reviewed the record of Roberts's waiver-of-postconviction-rights hearing certainly constitutes a breakdown in the appellate process that warrants reopening his postconviction proceedings. We have previously stated that, while there is no constitutional right to a postconviction proceeding, when a state undertakes to provide collateral relief, due process requires that the proceeding be fundamentally fair. *See Wooten,* 2010 Ark. 467, 370

---

**6.** The State avers that it was the 2000 hearing at which Roberts waived both his appeal and his postconviction rights; however, our decision affirming his conviction and sentence affirmed solely the waiver of his appellate rights. Any waiver of his postconviction rights was to be made following our affirmance of his sentence in accord with Ark. R.Crim. P. 37.5(b).

S.W.3d 475. Moreover, there is no question that the death penalty is a unique punishment that demands unique attention to procedural safeguards. *See Robbins,* 353 Ark. 556, 114 S.W.3d 217. Where we failed to ensure that Roberts was indeed competent to waive his rights to postconviction relief, such extraordinary circumstances require this court to reopen the proceedings. Accordingly, we grant Roberts's motion to reopen postconviction proceedings and reinvest the circuit court with jurisdiction under Ark. R.Crim. P. 37.5(b). Because we grant Roberts's petition on the foregoing grounds, we need not address his remaining arguments.

Motion to reopen proceedings and reinvest the circuit court with jurisdiction granted.