
# SUPREME COURT OF ARKANSAS
No. CR–15–417

| | |
|---|---|
| KARL D. ROBERTS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** March 17, 2016<br><br>APPEAL FROM THE POLK COUNTY CIRCUIT COURT [NO. CR–1999-70]<br><br>HONORABLE J.W. LOONEY, JUDGE<br><br>REVERSED AND REMANDED. |

**RHONDA K. WOOD, Associate Justice**

Karl Roberts appeals the circuit court's finding that he has the capacity to choose between life and death and to knowingly and intelligently waive his right to postconviction relief. He also asserts that mandatory review should be extended to postconviction proceedings in capital cases and that a rejection of his attempt to rescind his waiver violates the "solid footing" doctrine. We hold that the circuit court erred when it found that Roberts has the capacity to choose between life and death and could make a knowing and intelligent waiver; accordingly, we reverse and remand.

## I.    *Background*

In May 2000, Roberts was convicted of capital murder and sentenced to death for the murder of his twelve-year-old niece. Following his conviction, Roberts filed a waiver of appeal and of postconviction review. A hearing was held on the waiver, and the circuit court found that Roberts had the capacity to knowingly and intelligently waive his appeal

rights. This court conducted an automatic review pursuant to *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999), and affirmed Roberts's waiver of his right to appeal, as well as his conviction and sentence. *Roberts v. State*, 352 Ark. 489, 102 S.W.3d 482 (2003).

In May 2003, the circuit court held a hearing pursuant to Arkansas Rule of Criminal Procedure 37.5 (2015).  At the hearing Roberts appeared pro se and again waived his right to seek postconviction relief.  The circuit court concluded that he had the capacity and the competency to knowingly and intelligently waive his right to postconviction relief.  This court reviewed the record of Roberts's Rule 37.5 waiver hearing and affirmed the circuit court's findings. *See Roberts v. State*, 354 Ark. 399, 123 S.W.3d 881 (2003).

Then, in January 2004, the day of his scheduled execution, Roberts moved for a stay of execution in the United States District Court for the Eastern District of Arkansas, which was granted.  In July 2004, Roberts filed a writ of habeas corpus with the federal district court, but in 2007, the federal district court granted Roberts's request to hold the federal habeas corpus petition in abeyance, directing Roberts to seek relief in the state courts regarding all unexhausted claims. The federal habeas petition is currently stayed for Roberts to be given an opportunity "to convince the state courts that he did not competently waive his right to appeal and seek state post–conviction relief" and "to seek relief in the state courts under Rule 37.5 regarding all unexhausted claims." *See Roberts v. Norris*, 526 F. Supp. 2d 926 (E.D. Ark. 2007).

Thereafter, Roberts filed an untimely Rule 37.5 petition and an amended postconviction petition, which the circuit court denied.  In January 2012, Roberts filed a

SLIP OPINION

motion to reopen the proceedings and reinvest the circuit court with jurisdiction. *Roberts v. State*, 2013 Ark. 57, 426 S.W.3d 372. We granted Roberts's motion and held that a more recent competency evaluation of Roberts was required to adequately determine his competency to elect execution and waive postconviction remedies. *Id*. Roberts was subsequently evaluated, and the circuit court held a hearing to determine whether Roberts's waiver of his postconviction appeals was made knowingly and intelligently and with the capacity to choose between life and death. It concluded that Roberts was competent and had the capacity to waive his postconviction rights. Accordingly, the circuit court dismissed Roberts's petition for postconviction relief. Roberts now appeals the circuit court's decision regarding competency and capacity.

## II. *Analysis*

Roberts asserts several bases on which we should reverse the circuit court. Roberts first contends that the circuit court failed to make "sufficient findings of fact and conclusions of law sufficient to allow for meaningful appellate review." He alleges, in the alternative, that the circuit court's conclusion that he is competent to knowingly and intelligently waive all rights to postconviction relief and has the capacity to choose between life and death is clearly erroneous and that the circuit court substituted its opinion for that of the experts who testified at the postconviction hearing. Roberts also argues that this court should establish a mandatory postconviction proceeding and review for death-penalty defendants who waive their postconviction rights. Finally, he claims that this court should reverse the circuit court's acceptance of Roberts's waiver under the "solid footing" doctrine.

SLIP OPINION

We must determine preliminarily whether the circuit court issued sufficient findings to allow for meaningful appellate review. We conclude that it did. As he does on appeal, Roberts raised six points in his prehearing brief: (1) whether Roberts is incompetent to waive under *Rees v. Peyton*, 384 U.S. 312 (1966); (2) whether Roberts's waiver is illness driven and thus involuntary; (3) whether Roberts is incompetent under *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988); (4) whether Roberts's waiver is not "knowing" and "intelligent"; (5) whether the waiver should be disallowed under the "solid footing" doctrine; and (6) whether the court should require mandatory postconviction review. However, the first four points all address the issue of whether Roberts was competent to waive his postconviction rights.

When a petition for postconviction relief is denied following a hearing, Arkansas Rule of Criminal Procedure 37.5(i) requires that the court "make specific written findings of fact with respect to each factual issue raised by the petition and specific written conclusions of law with respect to each legal issue raised by the petition." Absent such findings, there can be no meaningful appellate review because the court determines whether the findings are supported by a preponderance of the evidence. *See Charland v. State*, 2012 Ark. 246.

Albeit concise, the circuit court's findings sufficiently specify the basis for its ruling. With regard to the first four issues raised in Roberts's brief, the circuit court's order denying postconviction relief states that it considered the testimony and reports of Dr. Mark Peacock and Dr. Daryl Fujii, Roberts's letter to Judge Richard Kopf, Roberts's letter to the circuit

4

SLIP OPINION

court, and affidavits of various people who had assisted in Roberts's defense. It applied the standard of competency this court outlined in *Roberts v. State*, 2013 Ark. 57, 426 S.W.3d 372, and concluded that Roberts "is competent to knowingly and intelligently waive all rights to post conviction relief and has the capacity to choose between life and death (i.e., elect execution) and to forego representation." We conclude that this sufficiently addressed the first four issues raised by Roberts, all of which fall under the umbrella of waiver. In addition, the circuit court adequately addressed Roberts's remaining arguments by finding that they were inapplicable and moot, respectively.[1]

Turning to the merits, although Roberts divides the issue of competency into separate points, the crux of his appeal is whether he is competent to waive his postconviction remedies. The standard for competency to elect execution is not equivalent to the standard for competency to stand trial. *Roberts*, 2013 Ark. 57, at 11, 426 S.W.3d at 378. "[A] defendant sentenced to death will be able to forego a state appeal only if he has been judicially determined to have the capacity to understand the choice between life and death

---

[1] In his dissent, Chief Justice Brill claims that due to the special nature of death penalty cases, we should reverse and remand with instructions to the circuit court. Due to the special nature of death cases, this is precisely why we are affording the defendant the relief requested. The dissent also fails to detail the "instructions" it would give to the circuit court. Presumably, the Chief Justice's dissent would direct this circuit court that now has a different judge who did not preside over the competency hearing, to review the same evidence and testimony examined by this court and engage in the hollow exercise of composing another order with additional reasons for Judge Looney's finding of competency. Or worse yet, the dissent would allow the circuit court to conduct a rehearing on competency, giving the State, in a death case, a second chance to present its evidence. Either scenario would only further delay justice, and frustrate the parties and process in this death penalty case.

and to knowingly and intelligently waive any and all rights to appeal his sentence." *Franz*,

296 Ark. 181, 754 S.W.2d 839, *overruled on other grounds by State v. Robbins*, 339 Ark. 379,

5 S.W.3d 51 (1999). This is the standard that governs the waiver of rights to postconviction

remedies following the affirmance of a death sentence, and we will reverse only if we find

that the trial judge's conclusion is clearly erroneous. *Id.* A finding is clearly erroneous when,

although there is evidence to support it, the appellate court, after reviewing the entire

evidence, is left with the definite and firm conviction that a mistake has been made. *Sartin*

*v. State*, 2012 Ark. 155, 400 S.W.3d 694.

At the competency hearing in the circuit court, both parties presented testimony

from psychological experts. The experts agreed that Roberts suffers from schizophrenia.

Thus, the pertinent inquiry is whether this mental disease renders Roberts incapable of

choosing between life and death or knowingly and intelligently waiving his postconviction

rights.

The State's expert, Dr. Mark Peacock, testified that he diagnosed Roberts with

schizophrenia with themes of auditory and visual hallucinations and delusional beliefs. On

direct examination, Dr. Peacock testified that there are varying degrees of schizophrenia and

that this diagnosis does not necessarily mean that the person is incompetent to make a

rational decision. However, when asked if Roberts was competent to make a decision

whether to live or die, Dr. Peacock failed to reach an ultimate conclusion. He stated,

> [I]t's a very difficult call for me just because there were elements of both psychotic
> reasoning involved in what I believe was going on with Mr. Roberts' decision as
> well as some very overtly stated, rational sounding reasons for why he would want

SLIP OPINION

to waive his [proceedings] . . . And whether one or the other amount to what I guess a preponderance of evidence was a call that I just didn't feel qualified or competent enough to make at that time.

On cross-examination, Dr. Peacock conceded that the psychotic symptoms from which Roberts suffers influence his desire to waive and that his thoughts and decision making are colored by his psychotic experiences. Peacock further admitted that Roberts's symptoms raised a significant concern about his capacity for making rational and stable decisions about matters as permanent as death.

Roberts presented the testimony of a neuropsychologist, Dr. Daryl Fujii. Like Dr. Peacock, Dr. Fujii stated that he noticed symptoms of schizophrenia, including auditory hallucinations and delusions, during his interview with Roberts. Dr. Fujii testified that while Roberts understands the implication of waiving his postconviction rights and can offer some rational-sounding reasons for waiver, Roberts's reasoning is ultimately tainted by his schizophrenic symptoms. He explained that much of Roberts's thinking about how to proceed is clouded by his psychosis. Therefore, in his opinion, Roberts does not have the capacity to choose between life and death or to make a knowing and intelligent waiver of his appellate rights.

Accordingly, both experts testified that Roberts's mental illness affects his ability to make a rational decision about waving his postconviction rights. Although Dr. Peacock refused to offer an opinion on the specific inquiry as to whether Roberts is competent, his remaining testimony suggests that Roberts's psychosis indeed impacts his ability to choose between life and death and knowingly and intelligently waive his postconviction rights.

The other evidence presented to the circuit court does not compel an alternative conclusion. Indeed, the only remaining evidence presented which might support a finding of competency are Roberts's letters to the circuit court and to the federal district court in which he asserts his desire to waive. Yet, as Dr. Peacock testified, Roberts's auditory hallucinations may affect the content of his letters since he frequently hears voices when he writes. Despite our belief that the trial court is in the best position to assess credibility and weigh the evidence, in this case we are left with a firm conviction that a mistake has been made. We hold that the circuit court was clearly erroneous when it concluded that Roberts was competent to waive postconviction review.[2] The evidence before the circuit court evinces that it is undeniable that Roberts suffers from schizophrenia, that these symptoms of his psychological disorder clearly impact his ability to choose between life and death and to knowingly and intelligently waive his appeal rights, and the State's own expert could not conclusively find that Roberts's rational reasoning was greater than his psychotic reasoning for waiving his appeal rights. We, therefore, reverse and remand to the circuit court for postconviction proceedings under Arkansas Rule of Criminal Procedure 37.5.

---

[2] Chief Justice Brill's dissent claims that in so holding this court "engages in fact-finding that is within the exclusive province of the circuit court." However, it is the duty of this court to review the circuit court's fact-finding for error, particularly in death penalty cases, which as the dissent admits, are different from other criminal cases due to the finality of the punishment. Indeed, issues of competency are of utmost importance in death penalty cases, and the circuit court's fact-finding is not immune from review. *See Newman v. State*, 2014 Ark. 7; *Harris v. State*, 238 Ark. 780, 384 S.W.2d 477 (1964).

Roberts makes two additional arguments on appeal. First, he argues that we should extend the "*Robbins* review," which requires mandatory appellate review regardless of whether the defendant waives his right to direct appeal, and require mandatory Rule 37.5 review in all capital cases. *See Robbins*, 339 Ark. 379, 5 S.W.3d 51. While we are not inclined to depart from our current procedure, we are mindful of the extraordinary amount of time it has taken for this case to reach a conclusion, the gravity of the sentence, and the impact the lack of finality has had on the parties, particularly the victim's family. For this reason, we refer to the Committee on Criminal Practice for its review and consideration the issue of whether postconviction proceedings under Arkansas Rule of Criminal Procedure 37.5 should be mandatory and not subject to waiver.

Second, Roberts asserts that the circuit court's acceptance of his waiver violates the "solid footing" doctrine outlined in *Porter v. State*, 332 Ark. 186, 188, 964 S.W.2d 184, 185 (1998). The circuit court concluded that this issue was inapplicable given its finding that Roberts was competent. Because we now have reversed the circuit court's finding that Roberts was competent, this issue does not require our consideration on appeal.

Reversed and remanded.

BRILL, C.J., and DANIELSON and GOODSON, JJ., dissent.

**HOWARD W. BRILL, Chief Justice, dissenting.** Because the circuit court did not make adequate written findings of fact and conclusions of law on Roberts's competency to waive his postconviction proceedings, I respectfully dissent. Accordingly, I would reverse and remand with instructions.

SLIP OPINION

I. *Facts*

The following facts are critical to my analysis and largely overlooked by the majority.

In *Roberts v. State*, 2013 Ark. 57, 426 S.W.3d 372, this court granted Roberts's motion to reopen proceedings and reinvest the circuit court with jurisdiction to determine Roberts's competency to waive his postconviction rights because the circuit court had previously relied on mental-health evaluations that were over three years old. We reopened the proceedings and held that the circuit court had failed to make a proper determination regarding Roberts's competency to waive his rights to postconviction relief. *Id*.

Roberts filed a petition for postconviction relief and a substituted petition in which he made seventeen claims of ineffective assistance of counsel. After filing a verified Rule 37 petition in the circuit court, Roberts purported to waive postconviction review. Before the circuit court's hearing on the Rule 37 petition, Roberts filed a prehearing brief requesting specific findings of fact and conclusions of law on the following six points: (1) whether his incompetency to waive under *Rees v. Peyton*, 384 U.S. 312 (1966) (per curiam) (establishing a two-prong inquiry when a death-sentenced defendant seeks to waive postconviction remedies); (2) whether his waiver was illness-driven and thus involuntary; (3) whether he was incompetent based on this court's standard articulated in *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988) (adopting the Arkansas standard for a death-sentenced defendant who seeks to waive any and all rights to an appeal) (overruled on other grounds); (4) whether he made his waiver knowingly and intelligently; (5) whether his waiver should

SLIP OPINION

be disallowed based on the solid-footing doctrine; and (6) whether this court should require a mandatory review of postconviction proceedings.

On September 18, 2013, the circuit court conducted a hearing to determine how Roberts wished to proceed. At the hearing, the circuit court stated that Roberts's counsel presented to the court copies of correspondence, dated May 10, 2013, that Roberts had sent to United States District Judge Richard Kopf purporting to waive his postconviction proceedings. The circuit court stated that Roberts would take the stand to answer questions about the May 10, 2013 letter and to indicate to the court "what his wishes [were] and how he wishe[d] to proceed." After the circuit court and counsel had the opportunity to ask Roberts questions about his letter to Judge Kopf, the circuit court ruled that, per our directive in *Roberts*, 2013 Ark. 57, 426 S.W.3d 372, Roberts must undergo a current evaluation for the circuit court to make a determination of whether he had made a knowing and intelligent waiver of Rule 37 proceedings.

On December 29, 2014, the circuit court held a hearing on Roberts's competency to waive further postconviction relief. At the hearing, Dr. Mark Peacock, a forensic psychologist from the Arkansas State Hospital, testified that he had conducted an evaluation of Roberts on January 29, 2014. Dr. Peacock testified that Roberts produced two clinical scale elevations in depression and suicidality and that Roberts had been diagnosed with schizophrenia. Dr. Peacock also testified that Roberts seemed suspicious at times during the interview and that Roberts had experienced hallucinations but that he appeared

11

adequately groomed and "could discuss things rationally at times." According to his evaluation report, Dr. Peacock concluded that

> Roberts expressed and discussed both rational and irrational bases to his decision for seeking a waiver of further postconviction relief and legal representation. His basic factual appreciation for the appeals process and bases for an appeal were intact and he was able to provide strong reasons, and [sic] which did not appear grossly colored by mental illness, for not desiring any further pursuit of relief in his case and for being put to death. However, he also discussed a desire to halt the daily harassment and personal monitoring by prisoners and prison staff as a factor in his decision to seek a waiver and such experiences were described in a manner strongly indicative of active psychotic illness and irrationality. He also expressed some ambivalence about being put to death, and has obviously wavered in his desire to receive death or appeal in the past. Thus, concerns about the capacity for rendering rational and stable decisions for a matter of permanence—such as waiving the right to postconviction review of his case and that would lead to imposition of death—were raised by his presentation.

Further, Roberts offered the testimony of Dr. Daryl Fujii concerning two evaluations that he conducted on October 17, 2011, and October 28, 2013. Dr. Fujii testified that he met with Roberts for three hours in October 2013 and that his diagnosis of schizophrenia remained the same as that in October 2011. Dr. Fujii stated, "In my opinion as a clinician, I think at this point Karl does not have the capacity to choose between life and death. His thinking is definitely impacted by his schizophrenia. I would say at this point, Karl is not able to make a knowing and intelligent waiver of any further appeals."

Following the evidentiary hearing, the circuit court considered the experts' testimony and reports, as well as Roberts's numerous items of correspondence, and entered an order accepting Roberts's waiver of postconviction proceedings and dismissing Roberts's Rule 37 petition and substituted petition. Specifically, the circuit court issued a two-page

order in which it recounted the facts of the case, the evidence that included the specific

testimony of the two expert witnesses, and ruled,

> After considering all relevant testimony and evidence and after applying the test of competency mandated by the Arkansas Supreme Court, the court finds that the Defendant, Karl Roberts, is competent to knowingly and intelligently waive all rights to postconviction relief and has the capacity to choose between life and death (i.e., to elect execution) and to forego representation. He has made that waiver clear by his letter filings in this court, which were cogent and unequivocal, and by his testimony of September 16, 2013.

Shortly after the circuit court entered this order, Circuit Judge J.W. Looney left the bench.

Subsequently, Roberts filed a motion for rulings on omitted issues and requested the

circuit court to modify its order to include the specific findings of fact and conclusions of

law that he presented in his prehearing brief. Circuit Judge Jerry Ryan then issued a letter

order, stating that, based on the December 29, 2014 order, "all issues were addressed or are

moot," and that the order

> tracks the directive of the Arkansas Supreme Court in *Roberts v. State*, 2013 Ark. 57. The court's order includes specific findings related to items 1-4 raised in the pre-hearing brief. Given the finding of competency and Mr. Robert's [sic] waiver, item 4 has no application and item 5 is moot.

## II. *Rule 37 Analysis*

This court has stated that Rule 37.5(i) sets out the postconviction procedures for

death–penalty cases. *Decay v. State*, 2013 Ark. 185, at 1–2. Subsection (i) provides in part

that the circuit court shall "make specific written findings of fact with respect to each factual

issue raised by the petition and specific written conclusions of law with respect to each legal

issue raised by the petition." Ark. R. Crim. P. 37(i) (2015). In *Echols v. State*, 344 Ark.

SLIP OPINION

513, 519, 42 S.W.3d 467, 470 (2001), this court held that this provision imposes a "more exacting duty" on the circuit court than that found in Arkansas Rule of Criminal Procedure 37.3(c), which provides postconviction procedures for non-death-penalty cases. Under Rule 37.5(i), it is *the petitioner* who determines the issues that must be addressed by the circuit court in a written order, while Rule 37.3(c) provides that *the circuit court* is to determine the issues and then make specific written findings of fact and conclusions of law with respect to those issues. *Id.*, 42 S.W.3d at 470. Significantly, in *Wooten v. State*, 338 Ark. 691, 1 S.W.3d 8 (1999), this court stated,

> Rule 37.5 evolved from Act 925 of 1997, now codified at Ark. Code Ann. §§ 16-91-201 to -206 (Supp. 1999), where the General Assembly expressly noted that the intent of the Act is to comply with federal law by instituting *a comprehensive state-court review*. *See* section 16–91–204; *Porter v. State*, 332 Ark. 186, 964 S.W.2d 184 (1998) (per curiam). The purpose of a meaningful state review is to eliminate the need for multiple federal habeas corpus proceedings in death cases. *Id.* . . . [W]e believe that the intent and purpose of that rule reinforces the responsibility of the trial court to make specific written findings and conclusions of law on each issue raised in the petition.

*Wooten*, 338 Ark. at 695–96, 1 S.W.3d at 10–11 (emphasis added). In my opinion, Rule 37.5 applies to competency-to-waive proceedings that arise in death-penalty postconviction proceedings.

In the instant case, the majority opinion is fatally flawed for three reasons: (1) it ignores the mandatory language of Rule 37.5(i) requiring a circuit court to make "specific written findings of fact" and "specific written conclusions of law"; (2) this court cannot make a meaningful appellate review without those specific findings, particularly in death-

14

penalty cases; and (3) it confuses the roles between the appellate and circuit courts by engaging in fact-finding that is within the exclusive province of the circuit court.

First, the circuit court's findings are conclusory at best and do not comply with Rule 37.5. Given the two-sentence ruling contained in the two-page order, the circuit court failed to provide any meaningful analysis of the six issues that Roberts presented to the circuit court before his competency-to-waive hearing. Without this analysis and specific written findings of fact and conclusions of law, I do not know the circuit court's rationale for its finding of competency, particularly in light of the *Rees* and *Franz* cases. Because the circuit court provided merely conclusory rulings, we cannot engage in any meaningful review of Roberts's competency to waive postconviction proceedings.

Second, this court, similar to the Supreme Court of the United States, has recognized that death-penalty cases are different from other criminal cases due to the obvious finality of the punishment. *See, e.g.*, *Gregg v. Georgia*, 428 U.S. 153 (1976); *Echols*, 344 Ark. 513, 42 S.W.3d 467; *Am. Civ. Liberties Union v. State*, 339 Ark. 314, 5 S.W.3d 418 (1999); *Franz*, 296 Ark. 181, 754 S.W.2d 839; *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999). Consequently, this court's appellate review of death-penalty cases has always been more comprehensive than in other cases. *See Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977). Because Rule 37.5(i) requires a "more exacting duty" of the circuit court to make specific written findings of fact and specific written conclusions of law, the petitioner determines the issues that must be addressed by the trial court in a written order. *Echols*, 344 Ark. at 519, 42 S.W.3d at 470. Here, Roberts determined those issues and presented

15

them to the circuit court in his prehearing brief, as well as his posttrial motion for rulings on omitted issues, but the circuit court declined to address those six issues and instead made a general, sweeping finding of competency to waive. This finding, in my view, does not rise to the level of a "more exacting duty" required by the circuit court in a death-penalty case.

Third, the majority has reviewed the record, which contains conflicting expert testimony on Roberts's competency, substitutes its review for the circuit court's finding of fact, reverses the circuit court, and now holds that Roberts is incompetent to waive postconviction proceedings. In doing so, the majority engages in fact-finding that is within the exclusive province of the circuit court. This court has repeatedly stated that it does not try issues of fact. *See Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003); *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). Further, as a matter of policy, this court should be wary of making conclusive findings of fact on a competency issue in a death-penalty case. Instead, the circuit court should carry out its obligations under Rule 37.5, thereby providing a basis for this court's meaningful review of Roberts's appeal. For these significant reasons, I respectfully dissent.

DANIELSON, J., joins.

**COURTNEY HUDSON GOODSON, Justice, dissenting.** In May 1999, appellant Karl D. Roberts confessed that he took his niece, Andria Brewer, to a secluded area, raped her, and then strangled the child to death to conceal his wrongdoing. Upon our review of his subsequent conviction of capital murder and sentence of death, we affirmed the circuit

court's finding that Roberts was competent to waive his direct appeal. *Roberts v. State*, 354 Ark. 399, 123 S.W.3d 881 (2003). Almost seventeen years after the murder, this court is now reviewing the circuit court's decision that Roberts has the capacity to understand the choice between life and death and to knowingly and intelligently waive his right to postconviction relief. I must respectfully dissent because, unlike the majority, I am not left with a definite and firm conviction that the circuit court's findings are clearly erroneous.

In May 2013, one month after Roberts filed his Rule 37.5 petition, Roberts wrote a letter to the federal district court judge who had presided over his habeas corpus petition stating that he no longer wished to proceed with postconviction relief. Roberts explained that he was motivated by a sense of justice and the desire to take responsibility for his actions and to provide closure to Andria's family. At a hearing before the circuit court in September 2013, Roberts echoed those same sentiments, which he repeated in letters he wrote to the circuit court in November 2013 and May 2014.

Dr. Mark Peacock reported that Roberts possesses a basic factual appreciation for the appeals process and that Roberts understands that a waiver of postconviction relief is a final and permanent decision that would lead to his execution. Peacock acknowledged that Roberts's wish to accept punishment and his desire to spare the feelings of others were rational and "strong" reasons to forgo postconviction relief. Peacock did say that Roberts's reasoning was influenced "to some degree" by psychosis, but he stated that Roberts's rational desires "did not appear [to be] grossly colored by mental illness." Dr. Daryl Fujii

agreed that Roberts has rational reasons for not wanting to pursue postconviction relief and said that Roberts's thinking is "clouded" by his mental illness.

In its order, the circuit court found that Roberts has the capacity to waive postconviction proceedings:

> While both experts described a diagnosis of schizophrenia, Dr. Peacock acknowledged that this did not necessarily mean that one is incompetent to make rational decisions. Both indicated that Mr. Roberts is capable of rational decision making although under some circumstances affected by mental disease.
>
> . . . .
>
> After considering all relevant testimony and evidence and after applying the test of competency mandated by the Arkansas Supreme Court, the court finds that the defendant, Karl Roberts, is competent to knowingly and intelligently waive all rights to postconviction relief and has the capacity to choose between life and death (i.e. to elect execution) and to forego representation. He has made that waiver clear by his letter filings in this court, which were cogent and unequivocal, and by his testimony of September 16, 2013.

In Arkansas, a defendant sentenced to death will be able to forego a state appeal only if he has been judicially determined to have the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence. *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988), *overruled on other grounds by State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999). On the issue of waiver, a circuit court's decision will not be disturbed on appeal unless its findings are clearly erroneous. *See id.* The standards articulated in *Franz* govern the waiver of rights to postconviction remedies following the affirmance of a death sentence. *See Roberts v. State*, 2013 Ark. 57, 426 S.W.3d 372. In *Franz*, we also commented on the deference accorded to the circuit court in such

matters, based on its superior position to observe the testimony of experts and that of the defendant.  We said,

> In *United States v. Oregon Medical Society*, 343 U.S. 326 [72 S. Ct. 690, 96 L. Ed. 978] (1952), commenting on the deference which this Court gave to the findings of a District Court on direct appeal from a judgment in a bench trial, we stated:
>
>> "As was aptly stated by the New York Court of Appeals, although in a case of a rather different substantive nature: 'Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth. . . . How can we say the judge is wrong? We never saw the witnesses. . . . To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.' *Boyd v. Boyd*, 252 N.Y. 422, 429, 169 N.E. 632, 634." *Id.*, at 339 [72 S. Ct. at 698].

*Franz*, 296 Ark. at 193, 754 S.W.2d at 845–46 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Upon my consideration of the record and applying our standard of review, I cannot say that the circuit court's findings are clearly erroneous.  The circuit court had the first-hand opportunity to observe Roberts and to assess the credibility of the expert witnesses.  On this record, the circuit court could well conclude that Roberts understands the choice between life and death and that his decision to waive further review is knowingly and intelligently made.  In deference to the circuit court, I would affirm its decision that Roberts has the capacity to forego postconviction relief.

*Jennifer Horan*, Fed. Def., by: *Scott W. Braden*, Ass't Fed. Def., for appellant.
*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.