Courtney Hudson Goodson, Justice, dissenting. . In May 1999, appellant Karl D. Roberts confessed that he took his' niece, Andria Brewer, to a secluded area, raped her, and then strangled the child to death to conceal his wrongdoing. Upon our review of his subsequent conviction of capital murder and sentence of death, we affirmed the circuit |17court’s finding that Roberts was competent to waive his direct appeal. State v. Roberts, 354 Ark. 399, 123 S.W.3d 881 (2003). Almost seventeen years after the murder, this court is now reviewing the circuit court’s decision that Roberts has the capacity to understand the choice between life and death and to knowingly and intelligently waive his right to post-conviction relief. I must respectfully dissent because, unlike the majority, I am not left with a definite and firm conviction that the circuit court’s findings are clearly erroneous. In May 2013, one month after Roberts filed his Rule 37.5 petition, Roberts wrote a letter to the federal district court judge who had presided over his habeas corpus petition stating that he no longer wished to proceed with postconviction relief. Roberts explained that he was motivated by a sense of justice and the' desire to take responsibility for his actions and to provide closure to Andria’s family. At a hearing before the circuit court in September 2013, Roberts echoed those same sentiments, which he repeated in letters he wrote to the circuit court in November 2013 and May 2014. Dr. Mark Peacock reported that Roberts possesses a basic factual appreciation for the appeals process and that Roberts understands that a waiver of postconviction relief is a final and permanent decision that would lead to his execution. Peacock acknowledged that Roberts’s wish.to accept punishment and his desire to spare the feelings of others were rational and “strong” reasons to forgo postconviction relief. Peacock did say that Roberts’s reasoning was influenced “to some degree” by psychosis, but he stated that Roberts’s rational desires “did .not appear [to be] grossly colored by mental illness.” Di*. Daryl Fujii |1sagreed that Roberts.has.rational reasons for not wanting to pursue postconviction relief and said. that Roberts’s thinking is “clouded” by his mental illness. ■ In its order, the circuit court found that Roberts has the capacity to waive postcon-viction proceedings: While both experts described a diagnosis of schizophrenia, Dr. Peacock acknowledged that this did not necessarily mean that one is incompetent to make rational decisions. Both indicated that Mr. Roberts is-capable of rational decision making although under, some circumstances affected by mental disease. [[Image here]] After considering all relevant testimony and evidence and after applying the test of competency mandated by the Arkansas Supreme Court, the court finds that the defendant, Karl Roberts, is competent to knowingly and' intelligently waive all rights to postconviction relief and has the capacity to choose between life and death (i.e. to elect execution) and to forego representation. He has made that waiver clear by his letter filings in this court, which were cogent and unequivocal, and.by his testimony of September 16, 2013. In Arkansas, a defendant sentenced to death will be able to forego a state appeal only if he has been judicially determined to have the capacity to understand the choice between life and death- and to knowingly and intelligently waive any and all rights to appeal his sentence. Franz v. State, 296 Ark. 181, 754 S.W.2d 839 (1988), overruled on other grounds by State v. Robbins, 339 Ark. 379, 5 S.W.3d-51 (1999). On the issue of waiver, a circuit court’s decision will not be disturbed on appeal unless its findings 'are clearly erroneous. See id. The standards articulated in Franz govern the waiver of rights to postconviction remedies following the affirmance of a death sentence. See Roberts v. State, 2013 Ark. 57, 426 S.W.3d 372. In Franz, we also commented on the deference accorded to the circuit court in such |1flmatters, based on its superior position to observe the testimony of experts and that of the defendant. We said, In United States v. Oregon Medical Society, 343 U.S. 326,[72 S.Ct. 690, 96 L.Ed. 978 (1952), commenting on the deference which this Court gave to the findings of a District Court on direct appeal from a judgment in a bench trial, we stated: “As was aptly stated by the New York Court of Appeals, although in a case of a rather different substantive ‘nature: ‘Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth.... How can we say the judge is wrong? Wé never saw the witnesses.... To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.’ Boyd v. Boyd, 252 N.Y. 422, 429, 169 N.E. 632, 634 [(1930)].” Id., at 339, 72 S.Ct. at 698. Franz, 296 Ark. at 193, 754 S.W.2d at 845-46 (quoting Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)). Upon my consideration of the record and applying our standard of review, I cannot say that the circuit court’s findings are clearly erroneous. The circuit court had the first-hand opportunity to observe Roberts and to assess the credibility of the expert witnesses. On this record, the circuit court could well conclude that Roberts understands the choice between life and death and that, his decision to waive further review is-knowingly and intelligently made. In deference to the circuit court, I would affirm its decision that Roberts has the capacity to forego postconviction relief.